## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

BRUCE SCHOJAN, SEAN TIMMONS,
and CHRISTOPHER TOLLERTON,
individually and on behalf of all others
similarly situated,

        Plaintiffs,

v.

PAPA JOHN'S INTERNATIONAL,
INC., PAPA JOHN'S USA, INC., and
TBAKER PIZZAMAKER, LLC,
d/b/a Papa John's #1219,

        Defendants.

No. _____

### NOTICE OF REMOVAL

Pursuant to 28 U.S.C. §§ 1332, 1441, 1446, and 1453, Defendants, Papa John's International, Inc., and Papa John's USA, Inc. (the "Papa John's Defendants"), remove this action, which is currently pending in the Thirteenth Judicial Circuit for Hillsborough County, Florida (the "State Court"), to the U.S. District Court for Middle District of Florida, Tampa Division. The grounds for removal are set forth below.

### I.

### THE STATE COURT ACTION

1.    About March 28, 2014, Plaintiffs, Bruce Schojan, Sean Timmons, and Christopher Tollerton (the "Named Plaintiffs"), filed this action in State Court against Defendants, Papa John's International, Inc. ("PJI"), and Tbaker Pizzamaker, LLC, d/b/a Papa John's #1219 ("Tbaker"), as Case no. 14-CA-003491 (the "State Court Action").

2.      About April 3, 2014, the Named Plaintiffs filed their First Amended Class Action Complaint and Demand for Jury Trial (the "Complaint").  The Complaint named Papa John's USA, Inc. ("PJUSA"), a wholly owned subsidiary of PJI, as an additional defendant.

3.      In the Complaint, the Named Plaintiffs allege that (a) the Papa John's Defendants own or have a financial interest in 274 restaurant locations in Florida, *see* Compl. ¶¶ 8, 33; (b) Tbaker is a franchise owner of a Papa John's restaurant ("franchisee") in Pinellas County, Florida, *id.* ¶ 9; (c) the Papa John's Defendants and all their franchisees have charged and continue to charge sales taxes on delivery orders from Papa John's locations throughout the State of Florida, *id.* ¶¶ 12, 17; (d) the Papa John's Defendants mandate this billing practice in each Papa John's restaurant and require each franchisee to follow this billing practice, *id.* ¶¶ 13–14; and, as a result, (e) "every customer who has ordered food for delivery from any Papa John's location in Florida has paid excess sales tax that Defendants and other franchise owners were not entitled to collect," *id.* ¶ 17.

4.      The Named Plaintiffs further allege that (a) Plaintiff, Timmons, placed an order from a Papa John's restaurant in Hillsborough County, Florida, which is owned by the Papa John's Defendants, resulting in an alleged overcharge of $.21 on a delivery charge of $3.00, *id.* ¶ 22; (b) Plaintiff, Tollerton, placed two orders with a Papa John's restaurant in Hillsborough County, resulting in an alleged overcharge of $.21 on a delivery charge of $3.00 on each delivery, *id.* ¶¶ 23–24; and (c) Plaintiff, Schojan, placed four orders with Tbaker in Pinellas County, resulting in an alleged overcharge of $.21 on a delivery charge of $3.00 on each delivery, *id.* ¶¶ 18–21.

5.      Plaintiffs seek to certify a putative class comprising

> [a]ll individuals who ordered food from any Papa John's location
> in the State of Florida and selected to have their order delivered,
> were charged a delivery fee, and charged and paid sales tax on the
> itemized delivery fee.

*Id.* ¶ 30.

6.      In the Complaint, the Named Plaintiffs assert (A) on behalf of themselves and others similarly situated, one count of negligence against the Papa John's Defendants only (Count I) and (B) on behalf of Plaintiff Schojan and others similarly situated, a second count of negligence against Tbaker only (Count II).  In addition to compensatory damages and attorneys' fees, Plaintiffs seek injunctive and declaratory relief as to each Defendant (Count III).  *Id.* ¶¶ 38–51 and p. 11.

7.      On April 22, 2014, the Papa John's Defendants accepted service of the Complaint.

## II.
## SUBJECT-MATTER JURISDICTION

8.      The Court has original subject-matter jurisdiction of this action pursuant to the Class Action Fairness Act of 2005 ("CAFA"), Pub. L. No. 109-2; 28 U.S.C. §§ 1332(d), because this is a class action in which the parties are minimally diverse and the aggregate amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs.

9.      <u>Statutory Class Action.</u>  The State Court Action was filed as a putative class action pursuant to Florida's class-action rule, Fla. R. Civ. P. 1.220.  *See* Compl. ¶ 30. Accordingly, this action falls within CAFA's definition of a class action as "any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class

3

action." 28 U.S.C. §§ 1332(d)(1)(B), 1453(a).

10.     <u>More than 100 Putative Class Members</u>.  The Complaint contains allegations that (a) "Papa John's Corporate" has 274 restaurants in Florida, Compl. ¶ 33; (b) each of those 274 stores charges the allegedly unlawful tax, *id.* ¶ 17; and (c) the putative class includes each person who ordered food for delivery from any of those 274 stores, *id.* ¶ 30.   Thus, the aggregate number of proposed class members is far greater than 100 persons for purposes of 28 U.S.C. § 1332(d)(5)(B).  *See Cappuccitti v. DirecTV, Inc.,* 623 F.3d 1118, 1123 n.7 (11th Cir. 2010) ("Plaintiffs do not specifically allege that the class is larger than 100 persons, but simple arithmetic dictates that it must be far larger.").

11.     <u>Minimal Diversity</u>.    The diversity of citizenship required by 28 U.S.C. § 1332(d)(2)(A) exists because at least one member of the putative class is diverse from at least one defendant.  PJI is a Delaware corporation with its principal place of business in Louisville, Kentucky, and is therefore a citizen of Delaware and Kentucky for diversity purposes.  *See* 28 U.S.C. § 1332(c)(1); Compl ¶ 6.   PJUSA is a Kentucky corporation with its principal place of business in Louisville, Kentucky, and is therefore a citizen of Kentucky for diversity purposes. *See* 28 U.S.C. § 1332(c)(1); Compl ¶ 7.   The Complaint alleges that each Named Plaintiff is a resident of Florida, and Plaintiffs seek relief on behalf of a putative class of persons who ordered food from Papa John's locations throughout the State of Florida.  *Id.* ¶¶ 3–5, 30.  Thus, it is clear from the allegations of the Complaint that at least one member of the putative class is a Florida citizen for diversity purposes.  *Cf. Cappuccitti* 623 F.3d at 1123 ("As the plaintiff class was comprised entirely of Georgia residents, there was sufficient diversity [under CAFA], since [the defendant was] a California corporation.").

12.     <u>Amount in Controversy</u>.  Under CAFA, the claims of individual putative class

members are aggregated to determine if the amount in controversy exceeds $5,000,000. 28 U.S.C. § 1332(d)(2), (6).  Plaintiffs seek compensatory damages, injunctive and declaratory relief, and attorneys' fees.  Without conceding any merit in the claims Plaintiffs attempt to assert or the damages they claim, their allegations in the Complaint concerning the amount in controversy satisfy CAFA's jurisdictional threshold.

13.   For themselves, the Named Plaintiffs seek to recover as compensatory damages charges of 7% on $3.00 delivery charges, or $.21 per delivery—$.84 (for four deliveries), $.21 (one delivery), and $.42 (two deliveries), for Plaintiffs, Schojan, Timmons, and Tollerton, respectively.  For the putative class members, the Named Plaintiffs seek to recover unlawful charges of approximately[1] the same amount per delivery for each delivery made by each of the 274 Florida restaurants over an undefined period.

14.   Given the allegations in the Complaint, the relevant period—for purposes of calculating the amount in controversy—is not limited by otherwise applicable statutes of limitations.[2]  Even considering only the years 2009–2014, however, it is clear that the alleged overcharges in controversy in this matter greatly exceed $5 million.  As shown by the Declaration of Claude M. Phenix,[3] PJI's Senior Director, Tax, the 274 Florida Papa John's corporate and franchised restaurants have collected the following sums during those years:

---

[1]  *See* Compl. ¶ 27 ("[T]he specific damages each customer suffered will vary depending on the sales tax rate of the county or city where the order was placed . . . .").  Florida's general sales tax rate is 6%.  *See* Fla. Stat. § 212.05(1). The rate of Florida's Discretionary Sales Surtax (also known as county tax), which is imposed by most Florida counties and applies to most transactions subject to sales tax, varies (between 0% and 1.5%) by county.  *See* Fla. Admin. Code r. 12A-15.001; Fla. Dep't Rev. Form DR-15DSS.

[2]  *See McGee v. Sentinel Offender Servs., LLC*, 719 F.3d 1236, 1241 (11th Cir. 2013) ("When determining the amount in controversy, we do not consider whether some damages claimed by the plaintiff might be precluded by a statute of limitations."); *Miedema v. Maytag Corp.*, 450 F.3d 1322 n.9 (11th Cir. 2006) ("When determining the amount in controversy for jurisdictional purposes . . . courts cannot look past the complaint to the merits of a defense that has not yet been established.").

[3]  A copy of the Phenix Declaration is attached as **Exhibit A**.

| Year | Taxes Collected on Delivery Charges |
|---|---|
| 2009 | $750,912 |
| 2010 | $908,318 |
| 2011 | $1,014,657 |
| 2012 | $1,147,021 |
| 2013 | $1,264,586 |
| Jan. 1–May 14, 2014 | $506,277 |
| **Subtotal** | **$5,591,771** |

15.     Further, the value of the injunctive and declaratory relief demanded in the Complaint confirms that the amount-in-controversy greatly exceeds the required $5 million.  If Plaintiffs obtain the requested injunctive relief, each putative class member will achieve a cost savings of between $.18 ([the 6% state sale tax rate + 0%  Discretionary Sales Surtax charged by 12 Florida counties] × the $3.00 delivery charge) and $.225 ([the 6% state sale tax rate + the 1.5% Discretionary Sales Surtax charged by nine Florida counties] × the $3.00 delivery charge) each time he or she places an order for delivery from Papa John's in the future.[4]  Although neither the exact number of putative class members who will place a delivery order in the future ("Repeat Customers") nor the precise frequency of their future orders is now known, it cannot reasonably be doubted that at least a large minority of the putative class members will continue to be—as many of them, including Plaintiffs Schojan and Tollerton, have been in the past—

---

[4]  *See South Florida Wellness, Inc. v. Allstate Ins. Co.*, 745 F.3d 1312, 1315–16 (11th Cir. 2014) (for amount in controversy purposes, the value of injunctive or declaratory relief is the value of the object of the litigation measured from the plaintiff's perspective).

Repeat Customers.[5] Indeed, prospective injunctive relief would be meaningless, and it could not be granted in this Court, unless putative class members were likely to order from Papa John's in the future. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 112 (1983) (standing to bring a claim for prospective or injunctive relief requires "a sufficient likelihood that [the plaintiff] will again be wronged in a similar way."); *cf. Miller v. MacGill*, 297 So. 2d 573, 575 (Fla. 1st DCA 1974) ("The long established rule in this jurisdiction is that before an injunction will issue, it must appear that there is a reasonable probability, not a bare possibility, that a real injury will occur."). Thus, the requested injunctive relief confirms that the Complaint puts more than $5 million in controversy.

16.    In short, the allegations in the Complaint and the facts in this Notice of Removal demonstrate that the amount in controversy greatly exceeds the sum or value of $5,000,000.

## III.
## <u>NO GROUNDS FOR ABSTENTION</u>

17.    Plaintiffs' joinder of Tbaker as a defendant does not bring this action with CAFA's "Local Controversy" exception. *See* 28 U.S.C. § 1332(d)(4)(A). As the Eleventh Circuit has observed, the statutory language and the legislative history show that Congress intended this exception to be narrow, with all doubts to be resolved in favor of jurisdiction. *Evans v. Walter Indus., Inc.*, 449 F.3d 1159, 1163 (11th Cir. 2006) (citing S. Rep. No. 109-14 at 42, U.S. Code Cong. & Admin. News 3, 40).[6] Accordingly, Congress carefully crafted the

---

[5] *See Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 754 (11th Cir. 2010) (holding that "reasonable extrapolations" are permissible as "the removing defendant is not required to prove the amount in controversy beyond all doubt or to banish all uncertainty about it.") (citing *Roe v. Michelin N. Am., Inc.*, 637 F. Supp. 2d 995, 999 (M.D. Ala. 2009) ("While it would be speculative to specify the *exact* dollar amount at issue in this case, it is not speculative to conclude . . . that the amount, whatever it is, far exceeds $75,000.") (emphasis added).

[6] *See also Walters v. Flag Credit Union*, 4:13CV241-RH/CAS, 2014 WL 129055, at *1 (N.D. Fla. Jan. 13, 2014) ("The Eleventh Circuit has emphasized that a district court must not lightly find CAFA jurisdiction lacking"); 2 McLaughlin on Class Actions § 12:6 (10th ed.) ("CAFA's legislative history indicates that Congress intended the local controversy exception to be narrowly applied, with any doubts resolved in favor of federal jurisdiction.");

requirements of the Local Controversy exception to ensure that, instead of becoming "a jurisdictional loophole," it would cover only "a truly local controversy—a controversy that uniquely affects a particular locality to the exclusion of all others." *Id.* at 1163–64 (quoting S. Rep. 109-14, at 39, U.S. Code Cong. & Admin. News at 38).

18.     This action does not meet those requirements for at least the following reasons: Tbaker is not a local defendant "from whom significant relief is sought by members of the plaintiff class" and "whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class." 28 U.S.C. §§ 1332(d)(4)(A)(i)(II)(aa), (bb).

19.     First, Plaintiffs have not alleged and cannot prove that a significant number or percentage of the putative class members has a claim against Tbaker, as required by the Local Controversy Exception. *See Evans*, 449 F.3d at 1167–68. Two of the three Named Plaintiffs assert no claim against Tbaker and they plainly have none, as they reside in Hillsborough County, which (a) is on the other side of Tampa Bay from Pinellas County, and (b) is, not surprisingly, home to the Hillsborough County restaurants at which those two Hillsborough County residents allegedly did place delivery orders. Moreover, the same will obviously be true of each putative class member who resides in one of Florida's other 65 counties. That is, the vast majority of putative class members never have ordered from Tbaker and never will. Instead, the vast majority of putative class members will have ordered from one of the other 274 stores mentioned in the Complaint.

20.     Additionally, even as to Plaintiff Schojan, the Complaint bases his claims almost exclusively on the alleged conduct of the Papa John's Defendants—not on Tbaker's conduct. Specifically, the Named Plaintiffs allege that the Papa John's Defendants *require* each

franchisee—such as Tbaker—to follow the allegedly unlawful billing practice and *require* each franchisee—such as Tbaker—to use the proprietary Papa John's point-of-sale technology that allegedly implements that practice. Compl. ¶¶ 13–14. For this reason, too, Tbaker's alleged conduct is not a significant part of the conduct alleged in the Complaint.

21.    Second, Plaintiffs do not allege and cannot prove that the members of the putative class seek from Tbaker a significant portion of the entire relief sought by the putative class, as required by the Local Controversy exception. *See Evans*, 449 F.3d at 1164. As noted above, a majority of the Named Plaintiffs and the vast majority of the putative class members plainly have no claim against and therefore are entitled to no relief from Tbaker. Thus, the relief sought by the subset of putative class members who ordered food for delivery from Tbaker cannot constitute a significant portion of the relief sought by the class as a whole. *See Lemy v. Direct Gen. Fin. Co.*, 12-14794, 2014 WL 903371, at *1–2 & n.1 (11th Cir. Mar. 10, 2014) (plaintiffs failed to prove Local Controversy applied where the putative class sought the lion's share of relief from out-of-state defendants, and only between 4.5% and 14% from local defendants).[7] The relief sought against Tbaker is precisely the sort of "small change" that Congress intended not to trigger the Local Controversy exception. *See* S. Rep. No. 109–14, at 29; *see also Casey v. Int'l Paper Co.*, 3:07CV421/RV/MD, 2008 WL 8854569 at *5–6 (N.D. Fla. Jan. 7, 2008) (Senate Report makes clear that "*the local defendant must be a primary focus of the plaintiffs' claims— not just a peripheral defendant.* The defendant must be a target from whom significant relief is sought by the class (as opposed to just a subset of the class membership) . . . .") (emphasis in

---

[7] *See also Walters*, 2014 WL 129055 at *2 ($144,50 was "not significant in relative terms, when compared to $10.3 million."); *cf. Coleman v. Estes Exp. Lines, Inc.*, 631 F.3d 1010, 1018 (9th Cir. 2011) (Local Controversy inapplicable where the application of common experience of lawyers and judges to the allegations of the complaint made it "obvious . . . that the great bulk of any damage award is sought from the [out-of-state] manufacturer of the cars rather than from the local dealers.").

original) (quoting S. Rep. No. 109-14 at 40).[8]

22.     Indeed, common sense suggests the conclusion that Plaintiffs joined Tbaker in an attempt to create a colorable basis for invoking the Local Controversy exception, and thus to frustrate the chief purpose of CAFA, which is to expand federal diversity jurisdiction to cover truly interstate class actions such as this one.  The Court should not countenance this attempt to frustrate Congress's purpose.[9]

23.     For at least these reasons, this is not a Local Controversy within the meaning of 28 U.S.C. § 1332(d)(4)(A), and Plaintiffs cannot carry their burden of proving the applicability of this narrow statutory exception.  *See Evans*, 449 F.3d at 1165 (the party objecting to removal has the burden of proving the local controversy exception applies).

## IV.
## OTHER PROCEDURAL REQUIREMENTS

24.     <u>Timeliness</u>.  This Notice of Removal is filed within thirty days after the Papa John's Defendants accepted service of the Complaint.  *See* 28 U.S.C. § 1446(b).

25.     <u>Venue</u>.  This district and division embraces the county (Hillsborough) in which

---

[8]  Plaintiffs cannot prove that the members of the putative class seek from Tbaker a significant portion of the entire relief sought by the putative class for the additional reason that Tbaker is unable to pay a potential judgment of even a small amount.  *See Robinson v. Cheetah Transp.*, No. CIV.A. 06-0005, 2006 WL 468820, at *3 (W.D. La. Feb. 27, 2006) ("[W]hether a putative class seeks significant relief from an in-state defendant includes not only an assessment of how many members of the class were harmed by the defendant's actions, but also a comparison of the relief sought between all defendants and each defendant's ability to pay a potential judgment."), *quoted with approval in Evans*, 449 F.3d at 1167.  *See also* Newberg on Class Actions § 6:20 (5th ed.) ("Some courts, including the Eleventh Circuit, have noted an additional inquiry [under the Local Controversy exception] into whether the putative significant defendant is capable of paying an adverse judgment . . . .") (citing *Evans*, 449 F.3d at 1167).  *But see Coleman*, 631 F.3d at 1018.  In all likelihood, Plaintiffs will also be unable to prove that two-thirds of the putative class members are Florida citizens.  *See* 28 U.S.C. § 1332(d)(4).

[9]  *Cf. Standard Fire Ins. Co. v. Knowles*, 133 S. Ct. 1345, 1350 (2013) (precertification stipulation as to the amount-in-controversy could not defeat jurisdiction under CAFA: "To hold otherwise would . . . exalt form over substance, and run directly counter to CAFA's primary objective: ensuring 'Federal court consideration of interstate cases of national importance.' § 2(b)(2), 119 Stat. 5.  It would also have the effect of allowing the subdivision of a $100 million action into 21 just–below–$5–million state-court actions simply by including nonbinding stipulations; such an outcome would squarely conflict with the statute's objective.").

the State Court action is now pending.  Therefore, this Court is the proper venue for this action pursuant to 28 U.S.C. §§ 89(b) and 1441(a) and Local Rule 1.02(b)(4).

26.    Other Defendants.    CAFA permits removal "without regard to whether any defendant is a citizen of the State in which the action is brought . . . by any defendant without the consent of all defendants." 28 U.S.C. § 1453(b).  Thus, Tbaker's consent to removal was not required.

27.    Notice.    Pursuant to 28 U.S.C. § 1446(d), the Papa John's Defendants will give written notice of the filing of this Notice of Removal to all parties in this action and will promptly file a copy of the notice with the State Court.  A copy of the Papa John's Defendants' Notice of Filing Notice of Removal is attached as **Exhibit B**.

28.    State Court Papers.    Pursuant to Local Rule 4.02, copies of all process, pleadings, orders, and other papers or exhibits on file in the State Court are attached as **Exhibits C–D**.

## CONCLUSION

For the reasons set forth above, the Court has original jurisdiction of this action pursuant to 28 U.S.C. § 1332(d), and this action is removable under 28 U.S.C. §§ 1441(a) and 1453.  If the Court disagrees or Plaintiffs challenge the removal, the Papa John's Defendants request leave to submit additional evidence to supplement this short and plain statement of the grounds for removal.[10]

---

[10]  *See* 28 U.S.C. § 1446(a) (notice of removal requires only "a short and plain statement of the grounds for removal."); *Lowery v. Alabama Power Co.*, 483 F.3d 1184, 1217 n.73 (11th Cir. 2007) (this requirement "is consonant with the pleading requirements of Rule 8(a)."); *Ellenburg v. Spartan Motors Chassis, Inc.*, 519 F.3d 192, 199 (4th Cir. 2008) ("[T]his language in § 1446(a) is deliberately parallel to the requirements for notice pleading found in Rule 8(a) of the Federal Rules of Civil Procedure."); *Spivey v. Vertrue, Inc.*, 528 F.3d 982, 986 (7th Cir. 2008) (Section 1446(a) establishes "a pleading requirement, not a demand for proof"); *Pretka*, 608 F.3d at 772–74 (error to exclude post-removal jurisdictional evidence); 28 U.S.C. §§ 1446(c)(2) (2014).  *But see Dart Cherokee Basin Operating Co., LLC v. Owens*, 730 F.3d 1234 (10th Cir. 2013), *cert. granted*, 134 S. Ct. 1788 (Apr. 7, 2014).

Dated: May 22, 2014

Respectfully submitted,

David B. Weinstein
Florida Bar No. 604410
weinsteind@gtlaw.com
Andrew J. Patch
Florida Bar No. 0091577
patcha@gtlaw.com
**GREENBERG TRAURIG, P.A.**
625 East Twiggs Street, Suite 100
Tampa, Florida  33602
Telephone: (813) 318-5700
Facsimile: (813) 318-5900
*Trial Counsel for Defendants,*
*Papa John's International, Inc.,*
*and Papa John's USA, Inc.*

## CERTIFICATE OF SERVICE

I certify that on May 22, 2014, a copy of the foregoing was sent by first-class U.S. Mail and electronic mail to Alan F. Wagner (AlanWagner@WagnerLaw.com) and Jason Whittemore (Jason@WagnerLaw.com), 601 Bayshore Boulevard, Suite 910, Tampa, Florida, 33606.

Attorney