UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

BRUCE SCHOJAN, SEAN TIMMONS,
and CHRISTOPHER TOLLERTON,
Individually and on behalf of all
others similarly situated,

      Plaintiffs,

                                      Case No.: 8:14-cv-1218-T-33MAP

vs.

PAPA JOHN'S INTERNATIONAL, INC.,
and PAPA JOHN'S USA, INC.,

      Defendants.
_____/

### Plaintiffs' Motion for Class Certification

For more than a decade, defendants' corporate-owned stores in Florida and all but one of its Florida franchisees have uniformly and unlawfully charge and collect sales tax on separately stated and avoidable delivery fees and continue to do so even now.   More troublesome, despite knowing since at least April 2014 that unambiguous Florida law makes Papa John's sales tax practice unlawful, defendants continue to charge and collect, and continue to participate in and allow the franchisee stores to charge and collect, sales tax on separately stated and avoidable delivery fees.

In fact, defendants have made it quite plain that they will continue the sales tax practice here at issue unless and until the Court orders a stop to the practice.  Even then, defendants say that they would still allow the franchisee stores to continue to charge and collect unlawful sales taxes on delivery fees, would do nothing to cause the franchisees to halt the unlawful practice, and would thereby continue to participate in that unlawful conduct

1

through the Papa John's website, mobile applications, billing software and other mechanisms that improperly charge and collect sales taxes from Floridians on delivery fees when none is due by law [Exhibit A, PJ at 352:24-357:19].[1]

Class certification is the <u>only</u> mechanism available to halt defendants' illegal sales tax collection practices because summary judgment, injunctive, or declaratory relief here are all unavailable absent a class certification.[2]  Plaintiffs have moved to amend the First Amended Class Action Complaint ("the complaint") to more accurately plead the factual basis for their claims, to add counts for defendants intentional conduct in continuing its unlawful sales tax practice, to seek affirmative and more specific injunctive and declaratory relief, and to directly assert a claim under Florida's Deceptive and Unfair Trade Practices Act.[3]

---

[1] Papa John's International, Inc. ("PJ International") and Papa John's USA, Inc. ("PJ USA") designated the same people to respond to plaintiffs' 30(b)(6) deposition notice, and the depositions of both companies were taken simultaneously through those individuals.  Citation to the deposition of PJ International and PJ USA will be referenced in the motion as "Exhibit A, PJ at" followed by the applicable page citation.  Exhibits to the depositions were marked seriatim and will be cited as "Exhibit __, Depo. Ex __".  Citation to the deposition of the Florida franchisee that has been deposed will be referenced as "Exhibit F, Tbaker at ___."

[2] Plaintiffs earlier filed a motion for summary judgment to obtain an order confirming the illegality of defendants' conduct and to enjoin them from continuing to charge, collect, or cause the charging or collection of sales tax on separately stated delivery fees that can be avoided at the option of the consumer.  The Court denied the parties' request to seal the motion and authorized the motion to be filed in open court on September 30 after the parties had met to agree upon what specific portions should be sealed, if any.  The parties ultimately agreed that neither the motion nor the exhibits needed to be sealed.  Unfortunately, plaintiffs have discovered that the "one-way intervention rule" requires the Court to determine whether a class does, in fact, exist prior to ruling on any motion for summary judgment.  *American Pipe and Construction Co., et al., v. State of Utah, et al.,* 414 U.S. 538 (1974);  *London v. Wal-Mart Stores, Inc., et al.,* 340 F.3d 1246 (11th Cir. 2003).

[3] Plaintiffs' proposed amended complaint adds the claims of two additional plaintiffs.  The pending complaint alleges that a plaintiff purchased from PJ USA – which turned out to be inaccurate.  The proposed amendment adds someone who has purchased from PJ USA.  In addition, both proposed new plaintiffs purchased pizza after defendants affirmatively and unquestionably knew of the illegality of their conduct and are acutely relevant to the claims of intentional misconduct.  Defendants', of course, oppose the motion to amend but erroneously do so (in part ) with a claim that plaintiffs seek certification of the new proposed plaintiffs [Dkt. 56].  To avoid any confusion on the issue, we state categorically that is not the case.  While plaintiffs do seek to certify the new counts and claims for damages, they are not asking the Court to appoint the two additional plaintiffs at class

This is no trivial matter.  Since 2010, Papa John's restaurants have made over 300 million pizza deliveries in Florida and collected over $5,000,000 in unlawfully charged delivery sales tax from customers in Florida.  Since served with plaintiffs' complaint that brought this unlawful practice to defendants' attention, over $537,000 has been charged to and collected from unsuspecting customers in Florida who were presented with and paid invoices for separately stated delivery fees that surreptitiously contained a hidden and unlawful sales tax on such fee.[4]

Plaintiffs move for class certification to halt the defendants' continued and unlawful sales tax practice and to properly and fairly compensate those customers who have been the victims of the defendants' unlawful practice.  Class certification here is a just, proper, and superior method to accomplish these goals, and plaintiffs respectfully request the Court to grant the motion.

<u>**Memorandum of Law in Support**</u>

**I.     Factual Basis for Class Certification**

Papa John's International, Inc. ("PJ International") is a worldwide pizza chain that operates and franchises pizza delivery and carryout restaurants under the trademark "Papa

---

representatives at this time and would do so only if the court permits an amendment and after defendants have had an opportunity to depose the additional plaintiffs.

[4] The declaration of PJ International's Claude Phenix, upon which removal was based, identifies the gross fees collected from 2009 through May 2014 [Exhibit B, Depo. Ex. 31].  Depo. Ex. 32, produced by defendants lists for each Florida store the monthly delivery fees collected by Papa John's restaurants since April 2010 through August 18, 2014.  The excel document itself, when printed as a pdf, is over 700 pages long and is not attached as an exhibit here (but is available to file if necessary).  Depo. Ex. 33 and 34 were also produced by defendants. Depo. Ex. 33 identifies the sales tax rate charged by each Florida store and is attached as Exhibit T.  Depo Ex. 34 identifies the location of each store and its store number.  It is attached as Exhibit U. The figures are the result of simple mathematical calculations using these documents.

John's" [Exhibit C at p. 1].[5]  In Florida, PJ International currently operates 47 company-owned restaurants through its wholly-owned subsidiary, Papa John's USA, Inc. ("PJ USA") and franchises 227 restaurants – entering into a standard franchise agreement with each restaurant owner [Exhibit A, PJ at 239:20-24; Exhibit C, pp. 6, 16; Exhibit S, Depo. Ex. 16]. PJ International requires its company-owned stores and all franchisee stores to use its computer-based point of sale technology known as PROFIT, which integrates with its "proprietary digital ordering platform," the papajohns.com web site and mobile applications through which customers may order food for delivery or pickup [Exhibit A, PJ at 13:2-4, 241:22-25; Exhibit F, Tbaker at 21:8-10].[6]  PROFIT has been used at Papa John's restaurants for at least the last sixteen years and was installed at each new restaurant opened by the company or a franchisee during that time period [Exhibit A, PJ at 11:18-22].

PROFIT is installed at all Papa John's restaurants by PJ USA, at the direction of PJ International.  Franchisees and managers of corporate-owned stores are encouraged to select an existing restaurant from which all settings, prices, coupons and system parameters – including the taxability of delivery fees – can be mimicked and imported from the existing restaurant computer system to the next restaurant's PROFIT computer system.  This process greatly reduces the time PJ USA would otherwise need to install from scratch a fully functioning PROFIT system at a new Papa John's restaurant [Exhibit A, PJ at 17:10-18:4,

[5] Exhibit C is an excerpt from PJ International's 2013 Annual Report.  The page number referenced is directed to the 10-K report included in Exhibit C.

[6] PJ International's 2013 and prior 10-Ks identify the PROFIT system as its proprietary system.  User's manuals and installation guides identify the technology as PJ International's.  The defendants testified that the software is an asset on PJ USA's books.

40:22-50:24; Exhibit D, Depo. Ex. 6 at p. 5]. If a mimicked restaurant's PROFIT software was programmed to improperly tax delivery fees, then the new restaurant would as well – causing the existing error to virally spread to new stores as they are opened.

The uniform PROFIT installation process and the forms filled out by a store manager or owner do not inquire about whether delivery fees should be taxed, but asks only the rate of sales tax at the geographical location of the store and from what specific Papa John's store the PROFIT system should be imported [Exhibit E, Depo. Ex. 9 at p. 54; Exhibit A, PJ at 78:1-22].[7] Once PROFIT is imported from another store and installed at a Papa John's restaurant, the restaurant itself has no ability to change the tax configurations unilaterally, but must instead call the PROFIT Help Desk to request any change to that store's particular computer system. [Exhibit A, PJ at 27:9-17; Exhibit F, Tbaker at 33:24-34:19]. Any change to the PROFIT computer system is thereafter made remotely from defendants' corporate headquarters [Exhibit A, PJ at 28:2-24].

In 1998, defendants realized that PROFIT was improperly accounting for differences among the various states regarding the charging of sales tax [Exhibit G, Depo. Ex. 7 at p. 6]. Defendants' tax department thereafter exhaustively researched each state's laws on sales tax and then – for some unknown reason – wrongly concluded that delivery fees are taxable in Florida [Exhibit H, Depo. Ex. 8 at p. 3:25]. Later, in 2003, a franchisee called and inquired about the taxability of delivery fees. Though defendants initially told the caller that the issue

---

[7] Sales tax in Florida can vary from county to county and city to city because of local discretionary taxes that serve to increase the statewide 6% sales tax. Papa John's restaurants in Florida, therefore, charge between 6% and 7.55% sales tax depending on their location – the specifics of which are detailed and stored within PROFIT [Depo Ex 32].

was one for the franchisee to decide, defendants' tax department again exhaustively researched each state's laws on the taxability of delivery fees and again wrongly concluded that delivery fees are taxable in Florida and disclosed that information to franchisees [Exhibit I, Depo. Ex. 11].  Defendants' tax department even created a spreadsheet for use by the PROFIT Help Desk – which would share the companies' conclusions regarding the taxability of delivery fees if someone called in an effort to elect a configuration to exempt sales tax from delivery fees [Exhibit A, PJ at 122:23-123:25; Exhibit J, Depo. Ex. 13].

The tax department's initial and erroneous conclusion that delivery fees were always taxable in Florida was never altered, even though prior iterations of the sales tax reference guide expressly referenced the Florida Administrative Code provision making the collection of tax on delivery fees unlawful [Exhibit K, Depo. Ex. 27 at p. 4:24-25; Exhibit L, Depo. Ex. 21].  After negligently concluding that delivery fees are always taxable in Florida, defendants then set the PROFIT default configuration to tax all delivery fees in Florida – and even instituted a system-wide computer "upgrade" so that PROFIT would tax delivery fees in Florida [Exhibit M, Depo. Ex. 10, Exhibit A, PJ at 113:22-115:9].

By all apparent accounts, the PROFIT software, working in conjunction with the papajohns.com web site and defendants' digital ordering platform, is the technology backbone of the Papa John's business model.  Customers may order pizza from the Papa John's website (www.papajohns.com) or a cell phone or tablet application, all of which are

maintained and operated by PJ USA for and on behalf of PJ International.[8]  Customers may also order pizza the "old fashioned way," by telephone or a personal appearance at the restaurant itself.

However a customer orders Papa John's pizza for delivery, the PROFIT computer system records all of the order details, including the purchaser's name, e-mail address, the method of payment, and his or her physical delivery address [Exhibit A, PJ at 146:21-147:13].  As is specifically relevant here, PROFIT also creates an invoice that separately states the individual food cost per item ordered, the applicable delivery fee, and the total sales tax being charged and collected from the customer for the order.  A web order will generate a screen shot invoice and an identical e-mail invoice.  PROFIT will also create a paper credit card receipt and – regardless of the method of payment – an additional invoice that is affixed to the pizza box itself.  Representative examples of the PROFIT-generated documents that show the defendants' separately stated delivery fee and tax statement are attached as Exhibit O, Depo. Ex. 3, hereto.[9]

To receive any food ordered from Papa John's, the customer may have the pizza delivered, may travel to the restaurant to pick it up, or may have someone else pick it up at the restaurant.  If a Papa John's restaurant delivers a pizza order to a customer, it will charge

---

[8] The website is copyrighted by PJ International, and its 10-K refers expressly to its "proprietary digital ordering platform" [Exhibit C at p. 5].  The company's privacy statement contained at PapaJohns.com expressly states that the website is operated by Papa John's International, Inc.  [Exhibit N].  The source of defendants' sworn testimony that the website is operated and managed and owned by PJ USA is a mystery, other than, perhaps, that it may do so on behalf of or at the direction of PJ International.

[9] The information collected is stored and accessible to the store where the order is placed and to the defendants through PROFIT's database.  [Exhibit A, PJ at 150:16-154:10].

a delivery fee that is separately stated on the billing documentation.[10]  Obviously, if a customer elects to pick up a pizza or have an order picked up by someone on his or her behalf, there is no delivery charge levied.[11]

In sum, it is clear from discovery to date that each and every time a customer orders a Papa John's pizza and has an option to pick up the order but instead elects to have the pizza delivered by Papa John's, the customer is charged a delivery fee that is separately stated on the invoice [Exhibit A, PJ at 144:8-12; Exhibit F, TBaker at 16:17-19].  With the exception of a single franchisee located in the Florida panhandle and operating sixteen restaurants, all Papa John's restaurants delivering food in Florida charge and collect sales tax on the delivery fee even though such fee could have been avoided at the option of the customer [Depo Ex. 32].

## II.    The collection of separately stated delivery fees which are avoidable at the option of the consumer is unlawful.

Florida law is beyond clear that it is unlawful to charge and collect sales tax on a delivery fee when the customer, at his or her option, can avoid the fee by picking up the pizza at the Papa John's restaurant itself.  Over twenty years ago, the Fifth District Court of Appeal considered whether delivery fees were taxable and held that:

---

[10] Papa John's corporate-owned stores began charging delivery fees in approximately 1997, and by 2010 – the time-period relevant here by virtue of Florida's four year negligence statute of limitations – all Florida restaurants were charging a delivery fee.  The amount of the fee can vary from store to store, but PJ International sets a maximum allowable fee, presently believed to be $3.00.

[11] A very small number of Papa John's stores not relevant to or subject to plaintiffs' claims do not offer delivery, as a personal appearance is required for a customer to order and receive her pizza.  In addition, there are some occasions when a Papa John's store may not allow pickup, for instance, 15 minutes before closing – but that limitation is recorded in the PROFIT system so that a customer accessing the internet would not be misled into believing that carry-out is possible [Exhibit A, PJ at 206:23-207:4].

> if such service charges or fees are separately itemized and applied at
> the sole option or election of the vendee or lessee, or can be avoided
> by decision or action on the part of the vendee or lessee alone, then
> those charges and fees are only incidental to the sale, are not part of
> the "sales price" and are not subject to sales tax.

*Department of Revenue v. B & L Concepts, Inc.*, 612 So.2d 720 (Fla. 5th DCA 1993).  There

is no contrary decision by any Court in Florida.  None.  The Florida Department of Revenue

codifies the *B & L Concepts* decision in Rule 12A-1.045 of the Florida Administrative Code,

which was effective in 1994 and thereafter.  The rule is clear:

> 1.  "Transportation charges" include carrying, delivery, freight,
>     handling, pick-up, shipping and other similar charges or fees.
>
>                    *       *       *
>
> 4(a)   The charge for transportation services is not subject to tax   when
>        both of the following conditions have been met:
>
>    1.  The charge is separately stated on an invoice or bill of sale;
>        and
>
>    2.  The charge can be avoided by a decision or action solely
>        on the part of the purchaser. . . .

[Exhibit P, Depo. Ex. 23 at pp. 1-4].  We know that Papa John's tax department considered

this administrative code provision as early as 2002 [Exhibit K, Depo. Ex. 27]; how it could

misread the plain language of the rule remains a mystery.[12]  Defendants should follow the

_____

[12] The illegality of taxing separately stated is delivery fees is also explained in the Department of Revenue's
interactive website [Exhibit P, Depo. Ex. 23 at p. 10].  Further, anyone can e-mail and ask the Department of
Revenue directly whether it is proper to charge sales tax on a pizza delivery fee separately stated on an invoice
when the customer could have elected to pick the pizza up.  The Department will respond and quote rule 12A-
1.045 – which clearly answers the question in the negative [Id. at pp. 11-14].  For some unknown and, frankly,
unfathomable reason, defendants have failed to even ask the Department of Revenue whether their tax practice
is proper, even after being served with plaintiffs' complaint directly raising the issue [Exhibit A, PJ at 292:16-
293:24; 296:6-297:6].

law, but refuse to do so.[13]

### III.    Proposed Class Definition

Plaintiffs propose the following class definition:

**Any person or entity that ordered Papa John's food for delivery on or after March 28, 2010, and who was charged and thereafter paid sales tax on a delivery fee that was separately stated on an invoice when the customer had the option to instead pick up the ordered food at a Papa John's location in Florida.[14]**

### IV.    The Plaintiffs and Their Lawyers

Messrs. Schojan, Timmons, and Tollerton, are all residents of the Tampa Bay area who have ordered pizzas for delivery from www.papajohns.com.  In each instance, their invoice contained a separately stated, avoidable delivery fee, and they were charged and paid sales tax on the delivery service [Exhibit Q].[15]  Plaintiffs are represented by Wagner, Vaughan & McLaughlin, P.A., a local law firm whose attorneys have been practicing law in the Tampa bay area and throughout Florida since 1963.  The principal lawyers at the firm handling the case are Alan Wagner and Jason Whittemore, whose qualifications are attached

---

[13] Defendants' rely upon a convoluted interpretation of a DOR technical assistance advisement, which by law has "no precedential value except to the taxpayer who requests the advisement and then only for the specific transaction addressed in the technical assistance advisement.  Section 213.22(1), Florida Statutes.

[14] Florida has a four-year statute of limitation for negligence claims.  The complaint was filed against PJ International on March 28, 2014; PJ USA was joined as a defendant on April 3, 2014 – hence the March 28, 2010, "start date" for the proposed class definition.

[15] Plaintiffs' original motion for class certification was served – at defendants' request – with a motion to seal the motion and its exhibits.  That motion was denied, and the Court ordered the parties to meet to determine whether redactions or sealing were truly necessary and to thereafter file the class motion on September 30 in open court [Dkt. 55].  With this refiling plaintiffs have submitted a complete Affidavit of Bruce Schojan – the initial filing having inadvertently cut off the top portion of page 2 of the affidavit.  Additionally, since originally filing the motion for class certification, plaintiffs' have learned through Sean Timmons September 18, 2014, testimony that paragraphs 3 and 7 of his Affidavit were inaccurate, although Mr. Timmons believed it to be accurate at the time it was signed.  Sean Timmons' Second Affidavit, supplementing his original affidavit and deposition testimony on the point, is contained within Exhibit Q.

as Exhibit R -- although all members of the firm have, from time to time, been involved in the decision-making process and representation decisions and likely will be in the future as well.

## IV.     ARGUMENT

### A.     Legal Standard

Pursuant to Rule 23(a), if a case satisfies at least one of the requirements of Rule 23(b), the Court may certify a class if:

> (l) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

A district court has broad discretion in determining whether to certify a class. *Washington v. Brown & Williamson Tobacco Corp.,* 959 F.2d 1566, 1569 (11th Cir. 1992).  In determining whether to certify a class, the Court may consider documents outside the allegations of the complaint, but may not consider the plaintiffs' likelihood of success on the merits of the claims.  *Kirkpatrick v. J.C. Bradford* & Co., 827 F.2d 718, 722—23 (11th Cir. 1992); *Lagrasta v. First Union Security Inc.,* 2005 WL 1875469 at *2 (M.D. Fla. 2005).

### B.     Plaintiffs' Proposed Class Meets the Requirements of Rule 23(a)

Plaintiffs must satisfy four criteria for class certification: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy. Fed. R. Civ. P. 23(a).

#### 1.     Numerosity

A plaintiff must show that the class is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(l). "[A] plaintiff need not show the precise number of

members in the class." *Vega v. T-Mobile USA, Inc.,* 564 F.3d 1256, 1267 (11th Cir. 2009).

"[R]easonable estimates with support as to the size of the proposed class" satisfy this

requirement. *Ruderman, et al. v. Wash. Nat. Ins. Co.,* 263 F.R.D. 670, 679 (S.D. Fla. 2010).

Courts have consistently held that forty class members is adequate to satisfy numerosity.

*Cox, et al. v. Am. Cast Iron Pipe Co.,* 784 F.2d 1546, 1553 (11th Cir. 1986); *James D. Hinson*

*Elec. Contracting Co. v. Bellsouth Telecomm., Inc.,* 275 F.R.D. 638 (M.D. Fla. 201l); *Kuehn*

*v. Cadle Co., Inc.,* 245 F.R.D. 545, 548 (M.D. Fla. 2007).

Plaintiffs' proposed class easily meets the numerosity requirement and joinder is

impracticable.  Sales taxes on delivery fees have been collected from Florida deliveries of

pizza each and every month since April 2010 by over 200 Papa John's restaurants.  Over

$74,500,000 has been collected as separately stated delivery fees and every penny of that has

been taxed at a rate of between 6% and 7.55% – translating to over $5,000,000 from

Floridians in sales taxes that were never owed and should never have been charged or

collected.  The tax per $3.00 delivery fee at the highest applicable rate of 7.55% is $.23, but

even at that rate the amount of improper tax collected, assuming a uniform maximum

delivery fee of $3.00, yields over 24,000,000 separate delivery transactions and improper

sales tax collections.[16]

While certainly Papa John's has repeat customers and repeat orders, any rational

assumption about how many pizza's people order a year will produce a class numbering in

---

[16] Delivery fees of between $2.00 and $3.00 are apparently common [Exhibit A, PJ at 367:6-9].  If a figure less than $3.00 is used, or a tax rate lower than the maximum, the number of transactions and people involved only increases.  Any conservative assumption produces a figure that easily meets the numerosity requirement.

the tens of thousands – and more likely the hundreds of thousands of people – having been affected by the tax policy here at issue. In fact, numerosity would be satisfied looking only at a single store's collection practice since April 2010, or even a single month of deliveries from Florida's 274 restaurants. *See Cox,* 784 F.2d at 1553.

### 2. **Commonality**

Rule 23(a)(2) requires questions of law or fact common to the class that "involve issues that are susceptible to class-wide proof." *Williams v. Mohawk Indus., Inc.,* 568 F.3d 1350, 1355 (11th Cir. 2009).

> The rule does not require that all of the questions of law or fact raised in the case be common to all the plaintiffs, just that there be at least one issue that affects all or a significant number of proposed class members. . . . The threshold for commonality is not high…. Factual differences between class members do not necessarily preclude a finding of commonality. The requirement is met if the questions linking the class members are substantially related to the resolution of the litigation.

*Scantland v. Jeffry Knight, Inc.,* 2011 WL 4530006, at *4 (M.D. Fla. 2011). A single common question is sufficient, and what matters is "the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Wal-Mart Stores, Inc. v. Dukes, et al.,* 131 S. Ct. 2541, 2551 (2011).

The uniform practice of defendants requiring Florida restaurants to use PROFIT in every Papa John's location, combined with the methods by which defendants implemented and maintained the configuration of the system as it relates to the charging of sales tax, will resolve common issues of fact and law and will apply equally to every member of the proposed class. The proposed class has at least the following common issues of law and fact:

> a. whether defendants are permitted to collect sales tax on separately stated delivery fees that are avoidable at the option of the

consumer by picking up the food ordered;

b.     whether customers were and continue to be charged sales tax on separately stated delivery fees that could have been avoided at the option of the consumer;

c.     whether defendants charging or collecting, or participating in the charging and collection, of sales tax on separately stated and avoidable delivery fees is a deceptive and unfair practice;

d.     whether PJ International requires all stores to use PROFIT;

e.     whether PJ International requires all Florida stores to comply with Florida law regarding sales tax;

f.     Whether PJ International was negligent by:

    i.     permitting its franchisees to charge and collect sales tax on separately stated and avoidable delivery fees or facilitating that practice – both before and after service of the complaint and failing to halt the practice;

    ii.     failing to advise its franchisees that charging and collecting sales tax on separately stated and avoidable delivery fees was unlawful;

    iii.     researching the taxability of delivery fees in Florida, concluding that separately stated and avoidable delivery fees were taxable, and communicating that opinion to corporate-owned and franchised restaurants;

    iv.     failing to properly supervise or train PJ USA in the installation and maintenance of PROFIT at Papa John's Florida restaurants locations to comply with Florida tax law.

g.     whether PJ International or PJ USA was negligent by:

    i.     charging sales tax on separately stated and avoidable delivery fees through papajohns.com or mobile apps;

    ii.     communicating to franchisees directly, through agents or subsidiaries, cloned restaurants, or HELP desk personnel that it was permissible to charge sales tax on delivery fees;

       iii.     configuring PROFIT to allow the charging and collection of sales tax on separately stated and avoidable delivery fees;

       iv.     continuing to charge sales tax on delivery fees after service of the complaint and permitting the PROFIT computer system to do so;

       v.     failing to communicate to its franchisee and corporate store managers the illegality of charging sales tax on separately stated and avoidable delivery fees;

       vi.     misrepresenting to customers that sales tax was lawfully due on delivery fees when the customer had the option to avoid the fee by picking up the pizza;

       vii.     failing to represent that the invoiced sales tax figure for food delivery included a sales tax on the delivery fee;

       vii.     allowing individuals untrained in tax law to determine to whether to tax delivery fees at Florida Papa John's locations;

       viii.     determining that delivery fees were taxable in Florida.

    h.     whether PJ USA has the ability to obtain a refund from the Florida Department of Revenue for improperly charged, collected, and remitted sales tax on delivery fees and whether PJ International may require its franchisees to do so as well; and

    i.     whether PROFIT can be configured to exempt delivery fees from sales tax in Florida during those periods of time when a restaurant permits carry out.

These issues of law and fact apply equally to plaintiffs' claims and the class members' claims they seek to represent.  The Court's resolution of plaintiffs' claims will resolve all of the class members' claims and will "generate common answers apt to drive the resolution of this litigation." *See Wal-Mart Stores, Inc.,* 131 S. Ct. at 2551.

### 3.      Typicality

The claims or defenses of the representative parties are typical of the claims or defenses of the class where a class representative possesses the same interest and suffers the same injury as the class members. *Prado-Steiman, et al., v. Bush,* 221 F.3d 1266, 1279 (11th Cir. 2000). The test for typicality, like commonality, is not demanding and is "generally met if the class representative and the class members received the same unlawful conduct, irrespective of whether the fact patterns that underlie each may vary." *Klewinowski v. MFP, Inc.,* 2013 WL 5177865 at *2 (M.D. Fla. 2013); *Rosario-Guerrero v. Orange Blossom Harvesting, Inc.,* 265 F.R.D. 619, 627 (M.D. Fla. 2010)).

Plaintiffs' claims are typical because each plaintiff placed at least one order with Papa John's and selected to have the order delivered when he had the option to pick the pizza up if he so chose. [Exhibit Q]. Each plaintiff received an invoice separately stating a delivery fee and was charged sales tax on that delivery fee in violation of Florida law. The claims and relief sought by plaintiffs are identical to the proposed class because they: 1) should not have been charged sales tax on the delivery fee; 2) seek declaratory and injunctive relief to stop defendants' unlawful practice; and 3) seek compensation to recover the sales tax wrongfully charged to and collected from them. Plaintiffs and class members suffered the same wrongdoing at the hands of defendants and any defense pled would apply equally to the claims of all class members.

### 4.      Adequacy of Representation

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This requirement "serves to

uncover conflicts of interest between named parties and the class they seek to represent."
*Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 625 (1997). This requirement is met if 1) the named plaintiff has interests in common with, and not antagonistic to, the interests of the class; and 2) plaintiffs' attorneys are qualified, experienced, and generally able to conduct the litigation. *Griffin v. Carlin,* 755 F.2d 1516, 1533 (11th Cir. 1985). Plaintiffs' interests and qualifications to represent the class are set forth in their affidavits [Exhibit Q]. Furthermore, plaintiffs' are represented by a firm well-established in the legal community who has represented consumers for decades [Exhibit R].

### C. Plaintiffs' Proposed Class Satisfy the Requirements of Rule 23(b)

#### 1. Plaintiffs' Claims Satisfy the Rule 23(b)(1) Criteria

In order to certify a class under Rule 23(b)(1)(A), plaintiffs must show that litigating separate actions for each individual class member would create a risk of inconsistent or varying adjudication with respect to individual class members that would establish incompatible standards for the conduct of the defendants to the class action. Plaintiffs' claims satisfy the criteria of Rule 23(b)(1).

Plaintiffs' claims rest primarily on one single question of law: can Papa John's stores charge sales tax on delivery fees where the delivery fee is separately stated on the customers' purchase receipt and the delivery fee can be avoided at the option of the customer? The ruling on this question will apply equally to every class member. A class is necessary to prevent any risk of contrary rulings if an individual class member were to proceed with an individual claim against defendants. Accordingly, class certification is appropriate to protect against the risks outlined in Rule 23(b)(1).

### 2.     Plaintiffs' Claims Satisfy the Rule 23(b)(2) Criteria

Plaintiffs' claims for declaratory and injunctive relief satisfy the requirements for

certification of a class under Rule 23(b)(2).  A Rule 23(b)(2) class is appropriate where

> the party opposing the class has acted or refused to act on grounds that
> apply generally to the class, so that final injunctive relief is appropriate
> respecting the class as a whole. . . .  Requesting a declaration that
> Defendants presently are violating the law and an injunction forcing
> defendants to comply with the law is precisely the type of class
> appropriate for class certification under Rule 23(b)(2).

*Fabricant v. Sears Roebuck,* 202 F.R.D. 310, 316 (S.D. Fla. 2001).  Here, plaintiffs seek

declaratory and permanent injunctive relief to enjoin defendants from charging or collecting

sales tax on delivery fees that are separately stated on an invoice and can be avoided at the

option or election of the consumer.

Despite notice of the unlawful conduct, defendants continue to charge and collect

sales tax on delivery fees [Depo. Ex. 32].  PJ International continues to allow its franchisees

to do so as well – failing to even communicate that their tax practice is unlawful [Exhibit A,

PJ at 353:21-355:24].  Defendants have the ability to change PROFIT to preclude sales tax

being charged on delivery fees at all Florida locations and a franchisee is required to "comply

with all applicable laws, ordinances, rules, and regulations of all governmental bodies" and

must "fully cooperate" with PJ International and its agents "in all aspects of the franchise

relationship" [Exhibit A, PJ at 113:22-115:9; Exhibit M, Depo. Ex. 10; Exhibit S, Depo. Ex.

16 at p. 26].  Defendants require a Court order to stop the practice of charging sales tax on

delivery fees in Florida [Exhibit A, PJ at 352:24-354:16] and this position of the defendants

therefore fully satisfies the requirements of Rule 23(b)(2).

### 2.     Plaintiffs' Claims Satisfy the Rule 23(b)(3) Criteria

The Court may certify a class under Rule 23(b)(3) if "common questions of law or fact predominate over any questions affecting individual members and ... a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).  "In a properly certified Rule 23(b)(3) class, 'the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, must predominate over those issues that are subject only to individualized proof." *Clausnitzer,* 248 F.R.D. at 657.

### a.     Predominance

The predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prod., Inc.,* 521 U.S. at 623. This "is similar to the requirement that 'claims or defenses' of the named representatives must be 'typical of the claims or defenses of the class." *Id.* at 623, n. 18.  "It is not necessary that all questions of fact or law be common, but only that some questions are common and that they predominate over individual questions." *Klewinowski,* 2013 WL 5177865 at *4 (quoting *Klay,* 382 F.3d at 1254).  "Whether an issue predominates can only be determined after considering the value the resolution of the class-wide issue will have in each class member's underlying cause of action.  Common issues of fact predominate if they have direct impact on every class member's effort to establish liability and on every class member's entitlement to relief."  *Id.*  Where all members of a class are subject to the same activity by defendants giving rise to plaintiffs' claims, predominance is satisfied.  *See Id.; Allapattah Services, et al., v. Exxon Corp.,* 188 F.R.D. 667, 674 (S.D. Fla. 1999).

### 1. Plaintiffs' Negligence Claims Satisfy Predominance

Class actions frequently involve questions of negligence, and this one is no different. The determination as to whether either or both defendants' breached a duty or reasonable care and were negligent:

1) in charging sales tax on delivery fees;

2) researching the issue and thereafter communicating their conclusions to others;

3) supervising the installation and configuration of PROFIT;

4) configuring PROFIT to tax delivery fees as a default;

5) permitting computer systems to be cloned from one store to the next and thereby making erroneous tax decisions viral;

6) permitting franchisees to violate the law by charging sales tax on delivery fees;

7) failing to warn or communicate to franchisee and store managers the illegality of taxing delivery fees;

8) failing to properly train or supervise those installing PROFIT; and

9) failing to tell consumers that the represented sales tax figure for food delivery includes a sales tax on the delivery fee or to create an invoice via PROFIT that did so;

are all common questions that will apply to the entire class which do not require individual proof from each class member. Plaintiffs common legal grievance – that defendants unlawfully charge sales tax on delivery fees in violation of Florida law is the primary fact giving rise to plaintiffs' negligence claims and a ruling on the above negligence issues will apply to all class members and will be determinative as to whether a claim exists at all for the class. *Allapattah Services,* 188 F.R.D. at 674.

Plaintiffs also claim that defendants have negligently misrepresented to customers that sales tax was lawfully due on delivery fees when the customer had the option to avoid the fee by picking up the pizza.  Defendants will assert that misrepresentation – which requires proof of reliance – is inappropriate for class certification.  That is not the case here, however, and Florida law is clear on that point.  Defendants uniformly represented that the sales tax on delivery fees was legal and due under Florida law by charging and then collecting the illegal sales tax.  For purposes of certifying a class arising out of this misrepresentation, reliance is proven for the class by simply showing that class members paid money based on defendants' disclosure that a charge is due for a particular purpose when, in fact, the money is not due for that purpose. *Turner Greenberg Associates, Inc. v. Pathman,* 885 So.2d 1004, 1006-07 (Fla. 4th DCA 2004); *Latman v. Costa Cruise Lines, N.V.,* 758 So.2d 699 (Fla. 3d DCA 2002).  Plaintiffs' claim for negligent misrepresentation poses no impediment to class certification as reliance is presumed by a class members' payment.

In *Pathman,* the plaintiff, on behalf of class members, alleged that the defendant failed to disclosure that a purported freight/insurance charge did not represent the actual shipping and insurance cost, but also included a profit to the seller.  *Pathman,* 885 So.2d at 1006.  The defendant argued that the class could not be certified because resolution by the Court would require individual inquiries as to whether each class member relied on the representation of the defendant as to the validity of the charge.  *Id.* at 1009.  The Court held that reliance was sufficiently shown by the fact the customers parted with money based on the charge being presented by the defendant as a pass-through charge when in fact that was a misrepresentation.  *Id.*

21

Papa John's implemented a uniform practice representing that sales tax was due on delivery fees for all Florida deliveries.  Customers paid sales tax based upon defendants' uniform invoice that separately stated a delivery fee but surreptitiously charged a sales tax on that fee.  These facts alone presume reliance by all class members.  *Id.; see also Singer v. AT&T Corp.,* 185 F.R.D. 681, 691 (S.D. Fla. 1998)(holding that reliance was presumed where defendants participated in a uniform billing practice on customers monthly bills).

### 2.  Plaintiffs' FDUTPA Claims Satisfy Predominance

The facts alleged in the complaint also support a claim under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") and plaintiffs have moved to amend the complaint to expressly add a count for defendants' violation of FDUTPA.  The standard required to prove a violation of FDUTPA in a class action case is the same as in an action by an individual consumer.  *Davis v. Powertel, Inc.* 776 So.2d 971, 974 (Fla. 4th DCA 2000).  A plaintiff is not required to prove the defendant had knowledge of a deceptive practice or that plaintiff relied on any representation of the defendant.  *Gavron v. Weather Shield MFG., Inc.,* 819 F.Supp.2d 1297, 1301-02 (M.D. Fla. 2011).

There is no requirement under FDUPTA to prove reliance in order to certify a class. *See Davis,* 776 So.2d at 974.  If the claims of all class members share one claim of a deceptive or unfair practice, predominance is satisfied.  *See Id.*; *see also Allapattah Services.,* 188 F.R.D. at 674.  The deceptive or unfair practice alleged by plaintiffs is that defendants unlawfully charge or participate in the charging and collection of sales tax on separately stated and avoidable delivery fees and do so deceptively by hiding the delivery fee tax in a

total representation of due and payable sales tax.  This practice applies uniformly to the entire class and predominates over any individual issue.

### 3.  Plaintiffs' Claims for Injunctive and Declaratory Relief Satisfy Predominance

As with plaintiffs' claims of negligence and violation of FDUTPA, their claims for injunctive and declaratory relief arise from defendants' common practice of charging sales tax on separately stated and avoidable delivery fees.  The Court's ruling on the legality of that practice will be determinative as to whether the class as a whole has a claim for injunctive and declaratory relief and predominance is thereby satisfied.

### b.    Superiority

"Superiority" focuses on the "advantages of a class action suit over whatever other forms of litigation might be realistically available to plaintiffs." *Klay v. Humana, Inc.,* 382 F.3d 1241, 1269 (11th Cir. 2004)(abrogated on other grounds) and the Court must consider the following non-exclusive factors:

> (A) the interest of members of the class in individually controlling the prosecution or defenses of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the difficulties likely to be encountered in the management of a class action.

Fed. R. Civ. P. 23(b)(3).  A principal concern is whether, in the absence of a class action, most members of the class will be deprived of any legal redress because their claims are relatively modest compared to the cost of the litigation. *Amchem,* 521 U.S. at 608 (citing *Mace v. Van Ru Credit Corp.,* 109 F.3d 338, 344 (7th Cir. l997)("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not

provide the incentive for any individual to bring a solo action prosecuting his or her rights"). A class action is clearly superior here.

Defendants' practices damaged each class member by less than $.25 per delivery order. Even if every class member has ordered a pizza every week for four years it would still be economically impractical for class members to retain a private attorney to pursue the $50.00 claim that person would have. There is no interest in individual class members controlling the prosecution of separate actions and it would be economically impossible for an individual to do so.

This case involves a violation of Florida law that seeks to represent customers ordering from Papa John's in Florida. This forum is ideal for resolution of this matter and is superior to all others. This action is quite manageable as a class action. Manageability "encompasses the whole range of practical problems that may render the class action format inappropriate for a particular suit." *Eisen v. Carlisle & Jacqueline,* 417 U.S. 156, 164 (1974). The evaluation is not whether the class action will create significant management problems, but whether it will create more management problems then the alternatives, including separate lawsuits by class members. *James D. Hinson Elec. Contracting Co.,* 275 F.R.D. at 648.

Management of this case as a class action presents no unusual difficulties. Defendants can identify every member of the proposed class and their damages by data stored in its PROFIT computer system, which can identify the name, address, and telephone number for every individual who placed an order for delivery in Florida [Exhibit A, PJ at 146:21-147:13]. Class treatment of this action will also eliminate the possibility of repetitious

litigation or inconsistent rulings on the same operative facts.  Managing this litigation as a class action promotes judicial economy and weighs heavily in favor of class certification. No other case seeks to certify a class of Papa John's Florida consumers.[17]

## V.    CONCLUSION

For the reasons stated herein, plaintiffs respectfully request that this Court grant this Motion for Class Certification, thus certifying the class as previously defined and designating Bruce Schojan, Christopher Tollerton, and Sean Timmons as Class Representatives.

/s/ Jason Whittemore
ALAN F. WAGNER, ESQUIRE
Florida Bar No. 0374105
JASON WHITTEMORE, ESQUIRE
Florida Bar No. 0037256
Wagner, Vaughan & McLaughlin, P.A.
601 Bayshore Blvd., Suite 910
Tampa, Florida  33606
(813) 225-4000
Jason@WagnerLaw.com
Attorneys for Plaintiffs

### Certificate of Service

I hereby certify that on September 30, 2014, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system.

/s/ Jason Whittemore
Jason Whittemore

---

[17] The undersigned are counsel in a similar case pending in Illinois, but that case only seeks an Illinois class. *Zachary Tucker, et al. v. Papa John's International, Inc. and Papa John's USA, Inc.,* No. 3:14-cv-00618-NJR-PMF (S.D. Ill., removed May 29, 2014).