**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

BRUCE SCHOJAN, et al.,
individually and on behalf of all others
similarly situated,

      Plaintiffs,

v.

PAPA JOHN'S INTERNATIONAL,
INC., and PAPA JOHN'S USA, INC.,

      Defendants.

No. 8:14-cv-1218-T33MAP

**MOTION TO DISMISS COUNTS III, IV, AND V OF THE SECOND**
**AMENDED COMPLAINTAND TO STRIKE PLAINTIFFS'DEMAND FOR**
**INJUNCTIVE AND DECLARATORY RELIEF**

Pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure,

Defendants, Papa John's International, Inc. ("PJI") and Papa John's USA, Inc.("PJUSA")

("Defendants"), move to dismiss Counts III, IV, and V of the Second Amended Complaint

("SAC" [ECF No. 59]) and to strike Plaintiffs' demands for injunctive and declaratory relief.

**INTRODUCTION**

Across the United States, retailers such as PJUSA are required by law to collect a

transaction tax on retail sales on behalf of state taxing authorities, and in doing so to apply

complex sales tax laws to various fact situations.  If they under-collect, they face civil liability to

the State, and they may face *qui tam* class-action lawsuits, ostensibly filed on behalf of the taxing

authority.  If they err in favor of the state and over-collect, they face class-action lawsuits which,

although generally unsuccessful, impose substantial costs on retailers and, ultimately, on their

customers.  Plaintiffs here ask the Court to expand the Florida law of false advertising to provide no escape from this predicament.

Plaintiffs allege that, while acting as agents of the State of Florida, Defendants and most Papa John's Florida franchisees ("Franchisees") charged or collected a $.21 sales tax on pizza delivery fee that—in Plaintiffs' opinion—is exempt from taxation under the Florida Revenue Code.  Plaintiffs do *not* allege that Defendants or the Franchisees have profited in any way from collecting this tax, or that they have failed to remit the tax collected to the State.  Moreover, although they rely on Section 12A-1.0145 of the Florida Administrative Code and on a decision construing Section 212.02(17), Florida Statutes, Plaintiffs do not contend that either provision creates a private remedy in tort.  Instead, Plaintiffs seek to recover their alleged economic losses based on theories of negligence and, in their latest complaint, on alleged misrepresentations in Papa John's sales receipts and invoices.  Additionally, Plaintiffs seek either to enjoin Defendants from issuing the sales receipts evidencing payment of the disputed tax, or to require Defendants—and, in effect, all Florida retailers—to separately and specifically assert on sales receipts the taxability of any each and every item listed on such receipts.

The Court should dismiss Counts III, IV, and V of the SAC for at least the following reasons.  First, Plaintiffs fail to allege facts showing they purchased goods or services from Defendants, which is an essential requirement of a FDUTPA claim.  Second, because the Papa John's sales receipts accurately state the nature and amount of the relevant charges, and comply with the Florida statute prescribing the tax content of sales receipts, they are not deceptive as a matter of law, and they could not harm a reasonable consumer.  Third, because Plaintiffs do not allege they were deceived by the sales receipts, they have not alleged facts plausibly showing that the receipts caused their alleged losses.  Fourth, Plaintiffs fail to adequately allege a factual

Greenberg Traurig, P.A.

basis for holding Defendants vicariously liable for the sales of the Franchisees.  Fifth, Plaintiff, Timmons, lacks standing to sue under FDUTPA because the receipts caused him no injury.  Sixth, each Plaintiff lacks standing to seek injunctive and declaratory relief regarding the receipts, because they have not alleged and cannot show a likelihood of future injury from the receipts.  Finally, Count V is a remedy, not an independent claim for relief in federal court.[1]

## BACKGROUND

### Statutory and Regulatory Background

Florida imposes a sales tax on the sales price of tangible personal property sold at retail in the State.  § 212.05(1)(a), Fla. Stat.  Although the economic burden of the sales tax is intended to fall on the purchaser—not the seller—sellers are required to collect the sales tax from retail purchasers at the time of sale.  See § 212.07(l)(a), Fla. Stat.; cf. State ex rel. Szabo Food Servs., Inc. of North Carolina v. Dickinson, 286 So. 2d 529, 532 (Fla. 1973); § 212.07(8), Fla. Stat (purchaser who cannot prove that he paid the tax to the seller is directly liable to the State).  Sellers collect the tax as agents of the State.  See § 212.18, Fla. Stat.  Only if a purchaser does not pay or the dealer fails to collect the tax, does a dealer become liable for the payment of the sales tax.  See. § 212.07(2), Fla. Stat.

The seller must, as far as practicable, add the amount of the sales tax to the sales price, and the amount collected must be separately stated as Florida tax on any charge ticket, sales slip, invoice, or other tangible evidence of sale.  See § 212.07(2), Fla. Stat.; Szabo, 286 So. 2d at 532.  Further, to prevent an appearance of economic advantage among some sellers, Florida law makes

---

[1]   The SAC should also be dismissed because the relief sought is barred by section 213.756, Florida Statutes, by the voluntary payment doctrine, and because Plaintiffs failed to exhaust their administrative remedies with the Florida Department of Revenue ("FDOR").  Because the Court denied a Rule 12(b)(6) motion to dismiss an earlier complaint on similar grounds, Defendants will not reargue these contentions here, but assert them here in an abundance of caution, to preserve their rights to rely on them later, on appeal and otherwise.

Greenberg Traurig, P.A.

it a crime for a seller to represent to the public—in any manner, directly or indirectly—that the seller will absorb or otherwise relieve the purchaser from any part of the tax, that the tax will not be added to the selling price, or that any part of the tax will be refunded in any way.  § 212.07(4), Fla. Stat.  A seller that is uncertain as to the taxability of an item may not pay the tax from its own funds.  In fact, it is a crime to refuse to charge and collect the sales tax from purchasers.  *See* § 212.07(3), Fla. Stat.

Any sums the seller collects as sales taxes must be promptly remitted to the State—even if they were erroneously collected.  *See* §§ 213.756(1), 213.756(a), 212.15(1), Fla. Stat.; *Blackshears II Aluminum, Inc. v. Dep't of Revenue*, 641 So. 2d 928, 929 (Fla. 5th DCA 1994); *Goldfinger's North, Inc. v. Dept. of Revenue*, No. 08-046207-CA-18, 2011 WL 7301655 ¶ 17 (Fla. Cir. Ct. May 2, 2011).

### *Plaintiffs' Allegations*

In their SAC, Plaintiffs allege that (1) PJI is the franchisor of 227 Papa John's restaurants ("Franchisee-Owned Restaurants") in Florida; and (2) the franchise agreement governing the relationship between PJI and the Franchisees (the "Franchise Agreement" or "FA"[2]) obligates Franchisees to buy from PJI and use in operating their Franchisee-Owned Restaurants PJI's PROFIT System point-of-sale technology.  SAC ¶¶ 4, 9, 11.

---

[2]  The Franchise Agreement allegedly governing the Franchisees' relationship with PJI is attached as Exhibit S to Plaintiffs' Motion for Class Certification (ECF No. 60-19).  The Court may consider the Franchise Agreement in deciding a motion under Fed. R. Civ. P. 12(b)(6), without converting the motion to one for summary judgment, because the Franchise Agreement is referenced in the SAC, *see, e.g.*, SAC ¶¶ 5–17, is central to Plaintiffs' claims, and its authenticity is undisputed.  *See  Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir.2002); *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir.2005) ("[A] document need not be physically attached to a pleading to be incorporated by reference into it; if the document's contents are alleged in a complaint and no party questions those contents, we may consider such a document provided it meets the centrality requirement imposed in *Horsley*."); *SFM Holdings, Ltd. v. Banc of America Sec., LLC*, 600 F.3d 1334, 1337 (11th Cir. 2010).  Further, because the Franchise Agreement is effectively incorporated by reference into the complaint, its specific provisions control over any inconsistent general allegations in the SAC.  *Cf. Simmons v. PeavyWelsh Lumber Co.*, 113 F.2d 812, 813 (5th Cir. 1940) ("Where there is a conflict between allegations in a pleading and exhibits thereto, it is well settled that the exhibits control.").

Greenberg Traurig, P.A.

The Franchise Agreement expressly disclaims any intent to create an agency relationship. Section 21(a), entitled "Independent Contractor," provides as follows:

> This Agreement creates only a contractual relationship between the parties subject to normal rules of contract law.  This Agreement does not create a fiduciary relationship between us and you [the Franchisee] and you [the Franchisee] are and will remain an independent contractor.  Nothing in this Agreement is intended to constitute either party as an agent, legal representative, subsidiary, joint venturer, partner, employee, or servant or the other for any purpose whatsoever.  You [the Franchisee] will hold yourself out to the public as an independent contractor, separate and apart from us.  You [the Franchisee] will not make any contract, agreement, warranty, or representation on our behalf without our prior written consent, nor incur any debt or other obligation in our name.

The Franchise Agreement also provides that the franchisor "will have no responsibility for the day-to-day operations of the [Franchisee's] Restaurant or the management of your [the Franchisee's] business," and sates that "you [the Franchisee] independently control the operation of your business . . . ." FA § 21(b).

The Franchise Agreement further provides that Franchisee agrees to be "solely responsible for inputting into and configuring the Information System [which is defined to include the PROFIT System] to accommodate information of local applicability, including state and local taxability of goods and services sold or provided in the Restaurants and state and local sales taxes." FA ¶ 10(ix).

In their SAC, Plaintiffs allege that (a) PJUSA owns and operates 47 restaurants ("PJUSA-Owned Restaurants") in Florida, SAC ¶ 4; (b) PJUSA installs the PROFIT System in Franchisee-Owned Restaurants and PJUSA-Owned Restaurants, *id*. ¶ 13; (c) PJUSA uses the PROFIT System in PJUSA-Owned Restaurants, *id*. ¶ 9; and (d) PJI operates an online ordering service

though the Papa John's website (the "Website") and receives a fee from Franchisees for sales made by them to customers who order online, *id.* ¶ 11.

The PROFIT System allegedly generates four types of "invoices" evidencing a sale: (1) "screen shot invoices," for orders placed through the Website; (2) "e-mail invoices," for orders placed through the Website; (3) paper credit card receipts; and (4) invoices affixed to the pizza box. *Id.* ¶¶ 20–21 & Ex. A (collectively, the "Invoices"). Plaintiffs allege that each Invoice separately itemizes the food cost, the delivery fee, the total sales tax, and the total sales price. *See id.* ¶¶ 20–21, 47–56, & Ex. A. On the Invoices, the sales tax charge appears immediately below the food price and the delivery fee and above the total sales price or "grand total." The Invoices also identify the seller as a specific Papa John's restaurant, and provide some combination of the restaurant's store number, address, and local telephone number.

Plaintiffs further allege in the SAC that (a) PJUSA charges and collects sales tax on delivery fees from customers of the PJUSA-Owned Restaurants, and (b) most, not all, Franchisees collect sales tax on delivery fees from customers of Franchisee-Owned Restaurants, and they continue to do so notwithstanding this lawsuit and the events of this lawsuit (including, presumably, Plaintiffs' counsel's letters to Franchisees, warning them that the delivery fees are exempt from taxation under Florida law).

As Plaintiffs apparently concede, PJI—which does *not* own any Papa John's restaurants in Florida—does not itself sell food for delivery to Papa John's Florida customers. Nevertheless, Plaintiffs incongruously assert that PJI "charges" sales tax on food that PJI does not sell. Specifically, Plaintiffs assert that PJI "charges" sales tax on orders placed through the Papa John's website, even though it is the employees of PJUSA-Owned Restaurants and Franchisee-Owned Restaurants—and not PJI employees—who deliver the food, tender it to the customer in

6

exchange for payment, and accept payment.  Put simply, they are entities that charge and collect the total sales price (including the tax) on delivery orders and not PJI.  Similarly, Plaintiffs assert that PJUSA "charges" sales tax on food that it does not sell—orders placed with the Franchisee-Owned Restaurants—even though the Franchisee-Owned Restaurants' employees deliver the food, tender it to the customer in exchange for payment, and accept payment—or, again in plain English, charge and collect the total sales price (including the tax) on the orders.

In Counts III and IV ("Florida Deceptive and Unfair Trade Practice Act"), Plaintiffs allege that Defendants engaged in deceptive and unfair trade practices by presenting customers with Invoices that, beneath the price of the food ordered and the delivery fee, listed a total sales tax amount that included a sales tax on the delivery fee.  Specifically, Plaintiffs allege that the Invoices either (i) failed to state with sufficient clarity that the total sales tax included a sales tax on the itemized delivery fee, or, alternatively, (ii) clearly represented that the total sales tax included a sales tax on the delivery fee, but by doing so, impliedly represented that that delivery fee was taxable under Florida law.  Count V ("Declaratory and Injunctive Relief") seeks an order (a) enjoining Defendants from charging or collecting sales tax on delivery fees, (b) directing PJUSA to seek, on Plaintiffs' behalf, a refund of Plaintiffs' tax payments from the State of Florida; and (c) directing PJI to force Franchisees, in a manner unspecified, to seek, on Plaintiffs' behalf, an administrative refund of Plaintiffs' tax payments made as part of their purchases from the Franchisees.

## LEGAL STANDARDS

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a short and plain statement of the claim that fairly notifies the defendant of both the claim and the supporting grounds.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  A complaint must include factual

7

allegations that, when taken as true, "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).   Mere legal conclusions—even if couched as factual accusations—are not taken as true. *Id.*   Courts considering motions to dismiss must apply these principles by (1) first eliminating any allegations in a complaint that are merely legal conclusions, and then (2) determining whether the remaining factual allegations "plausibly give rise to an entitlement to relief." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010).   Factual allegations that are "merely consistent with" a defendant's liability—rather than plausibly suggesting such liability—do not suffice. *Mamani v. Berzain*, 654 F.3d 1148, 1153 (11th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678).

Challenges to subject-matter jurisdiction come in two forms.   Facial challenges require the court to determine whether a plaintiff has sufficiently alleged a basis of subject-matter jurisdiction. *See Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990).   Factual challenges "challenge the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered." *Id*.   In response to a factual challenge to standing, the plaintiff must demonstrate by a preponderance of the evidence that standing exists. *See Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. May 8, 1981[3]); *Perry v. Village of Arlington Heights*, 186 F.3d 826, 829 (7th Cir. 1999).   As set forth below, Defendants assert both facial and factual challenges to the Court's subject-matter jurisdiction as to Counts III and IV (as to Plaintiff Sean Timmons) and Count V (as to all Plaintiffs).

---

[3]   In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit issued before October 1, 1981.

Greenberg Traurig, P.A.

**ARGUMENT**

I.    **The SAC Fails to State a FDUTPA Claim Under Florida Law.**

   A.    **Plaintiffs Fail to Allege a Consumer Transaction with Defendants.**

   Counts III and IV must be dismissed because Plaintiffs fail to allege that they were subjected to unfair or deceptive trade practices in the course of a purchase of goods or services from Defendants.

   FDUTPA authorizes claims for actual damages by a "person" who has suffered a loss as a result of a FDUTPA violation.  § 501.211(2), Fla. Stat.[4]  Although this provision was amended in 2001 to authorize claims for actual damages by "a person," instead of "a consumer" (as the previous version stated), numerous courts—including this Court—have held that that the amendment was not intended to create a cause of action, which is not based on a consumer relationship or transaction, but, instead, simply to extend FDUTPA's protection to business entities acting as consumers.[5]  Courts have thus held that the *only* persons who may sue for damages under FDUTPA are individuals or entities who purchased goods or services from the defendant.[6]  Under these authorities, to state a plausible FDUTPA damages claim against the Defendants, Plaintiffs must allege facts showing that they purchased goods or services from *both*

---

[4]  "A consumer claim for damages under FDUTPA has three elements: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." *Rollins, Inc. v. Butland*, 951 So. 2d 860, 869 (Fla. 2d DCA 2006).

[5]  *See Leon v. Tapas & Tintos, Inc.*, No. 14-21133, 2014 WL 5032435, at *5–6 (S.D. Fla. Oct. 8, 2014); *Pinecrest Consortium, Inc. v. Mercedez–Benz USA, LLC*, No. 13–20803–CIV, 2013 WL 1786356, at * 1–2 (S.D. Fla. April 25, 2013); *Innovative Strategic Commc'ns, LLC v. Viropharma, Inc.*, No. 8:11–cv–1838–T–33TBM, 2012 WL 3156587, at *12 (M.D. Fla. Aug. 3, 2012); *Kertesz v. Net Transactions, Ltd.*, 635 F. Supp. 2d 1339, 1349 (S.D. Fla. 2009).

[6]  *See In re Maxxim Med. Group, Inc.*, 434 B.R. 660, 693 (Bankr. M.D. Fla. 2010); *Goodbys Creek, LLC v. Arch Ins. Co.*, No. 3:07-CV-947-J-33HTS, 2008 WL 2950112, at *8 (M.D. Fla. July 31, 2008); *Leon*, 2014 WL 5032435, at *6 (collecting cases); *Carroll v. Lowes Home Centers, Inc*., 12-23996-CIV, 2014 WL 1928669, at *4 (S.D. Fla. May 6, 2014).

PJI and PJUSA, and that *both* entities committed unfair or deceptive trade practices in connection with Plaintiffs' purchases.  The SAC fails to satisfy these requirements:

- Plaintiffs fail to allege facts showing or suggesting that any Plaintiff purchased goods or services from PJI, which they *admit* sold them no pizzas[7] and owns no Papa John's restaurants in Florida.[8]

- Plaintiffs fail to allege that Plaintiffs, Schojan, Tollerton, and Timmons, purchased goods or services from PJUSA, and these Plaintiffs have *admitted* they never purchased food for delivery from PJUSA.[9]

- Plaintiffs Roberts and Brown fail to allege that they purchased food for delivery from PJUSA.[10]

---

[7] *See* Pls.' Expedited Resp. to Defs.' Motion to Redesignate (ECF No. 18) at 9 (arguing that § 213.756, Fla. Stat.—which immunizes sellers from damages claims based on sales taxes remitted to the State—protects the actual sellers, PJUSA or the Franchisees, whose employee "shows up at the purchaser's door and accepts her cash or has her sign a credit card slip," but not PJI, as a non-seller who received no payment from Plaintiffs); Pls' Mem. in Opp'n to Defs.' Motion to Dismiss (ECF No. 21) at 8–9 (same); *id.* at 15–16 (arguing that the voluntary payment defense is inapplicable to PJI because PJI sold nothing to Plaintiffs).

[8] Plaintiffs' conclusory assertion that PJI acted "through its wholly-owned subsidiary, PJUSA," *see e.g.*, SAC ¶ 4, does not change this result.  To begin with, as demonstrated below, Plaintiffs admit that at least three of the five plaintiffs did not order from a PJUSA-Owned Restaurant either.  And in any event, Plaintiffs cannot hold PJI vicariously liable for its subsidiary's actions without demonstrating that (a) PJUSA is in reality the alter ago of PJI, such that their separate identities were not lawfully maintained; and (b) PJI formed or operated PJUSA as a mere sham, to mislead creditors or accomplish a fraudulent or illegal purpose.  *See Ocala Breeders' Sales Co. v. Hialeah, Inc.*, 735 So. 2d 542, 543 (Fla. 3d DCA 1999); *SEB S.A. v. Sunbeam Corp.*, 148 F. App'x 774, 800 (11th Cir. 2005) (quoting *Johnson Enters. of Jacksonville, Inc., v. FPL Group, Inc.*, 162 F.3d 1290, 1320 (11th Cir. 1998) (citing *Dania Jai–Alai Palace, Inc. v. Sykes*, 450 So.2d 1114, 1117 (Fla. 1984)); *Lipsig v. Ramlawi*, 760 So. 2d 170, 187 (Fla. 3d DCA 2000).  Plaintiffs have not alleged and cannot allege facts showing either precondition for a veil-piercing claim.  *See Borchardt v. Mako Marine Int'l, Inc.*, 08-61199-CIV, 2009 WL 3856678 (S.D. Fla. Nov. 17, 2009) (dismissing FDUTPA claim for failure to allege facts to support veil-piercing); *Leon*, 2014 WL 5032435, at *6 n.3 (same); *cf. N. Am. Clearing, Inc. v. Brokerage Computer Sys., Inc.*, 607-CV-1503-ORL19KRS, 2009 WL 1513389 (M.D. Fla. May 27, 2009) (conclusory recitation of elements of veil-piercing was inadequate to prevent dismissal).

[9] *See* Pls. previous Motion for Class Certification (ECF No. 57) at 2 n.3 (stating that the First Amended Complaint, filed by Schojan, Timmons, and Tollerton, "alleges a plaintiff purchased from PJUSA—*which turned out to be inaccurate*.") (emphasis added).

[10] Roberts and Brown merely allege that they ordered food for delivery from Papa John's locations in Hillsborough and Seminole counties, respectively.  *See* SAC ¶¶ 55–56.  Because these allegations are consistent with the possibility that one or both ordered from a Franchisee-Owned Restaurant rather than from a PJUSA-Owned Restaurant, *cf.* ECF No. 57 at 2 n.3 (the SAC "adds *someone* who has purchased from PJUSA") (emphasis added), they do not satisfy Rule 8(a)'s plausibility standard.  *See Iqbal*, 556 U.S. at 678 (facts merely consistent with a defendant's liability do not satisfy Rule 8(a)); *Mamani*, 654 F.3d at 1153 (same); *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1330 (11th Cir. 2012) (same); *Wooten v. Quicken Loans, Inc.*, 626 F.3d 1187, 1196 (11th Cir. 2010) (same); *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1294 (11th Cir. 2010) (same).

Greenberg Traurig, P.A.

In short, Counts III and IV should be dismissed because the SAC fails to allege that each

Plaintiff suffered loss in connection with a purchase of pizza from Defendants.  Because the

defects cannot be cured by amendment, Count III should be dismissed with prejudice, and Count

IV should be dismissed with prejudice as to Plaintiffs Schojan, Tollerton, and Timmons.  *See,*

*e.g., Raimbeault v. Accurate Mach. & Tool, LLC*, No. 14–CIV–20136, 2014 WL 5795187, at *7

(S.D. Fla. Oct. 2, 2014) ("Because Plaintiffs have nowhere alleged that they engaged in the

purchase of goods or services from any Defendant, their FDUPTA claim will be dismissed with

prejudice for failure to state a claim, pursuant to Rule 12(b)(6).").[11]  Defendant do not oppose an

order of dismissal that allows Brown leave to re-plead to allege, if she can plausibly do so,[12] that

she purchased pizza from each Defendant.

## B.      The Invoices Are Not Deceptive As a Matter of Law.

Counts III and IV should be dismissed for the additional reason that the Invoices are not

deceptive as a matter of law.  Deception occurs within the meaning of FDUTP where, "there is a

representation, omission, or practice that is likely to mislead the consumer acting reasonably in

the circumstances, to the consumer's detriment."  *Zlotnick v. Premier Sales Grp., Inc*., 480 F.3d

1281, 1284 (11th Cir. 2007).   "This standard requires a showing of probable, not possible,

deception that is likely to cause injury to a reasonable relying consumer."  *Id*.  In Counts III and

IV, Plaintiffs allege that the Invoices are deceptive because they either (i) failed to state with

---

[11]  Plaintiffs' conclusory assertion that Defendants "participated" in the franchisees' charging and collecting sales tax on orders placed with and delivered by Franchisee-Owned Restaurants does not require a different result.   As the SAC itself makes clear, even as to orders placed with Franchisee-Owned Restaurants using the Website (to say nothing of telephone orders placed directly with the Franchisee-Owned Restaurants), the entities that exchanged goods and services for payment on such orders—in other words, the sellers—were the Franchisee-Owned Restaurants.   Plaintiffs have not alleged facts showing that Defendants directly participated in these sales transactions.  *See also KC Leisure, Inc. v. Haber*, 972 So. 2d 1069, 1074 (Fla. 5th DCA 2008) (a defendant cannot be held liable for FDUTPA violation unless he was a "direct participant" in the alleged violation).

[12]  *See* Plaintiffs' Motion for Class Certification Ex. Q (ECF No. 60-17 at 30–34 ¶ 4).

sufficient clarity that the total sales tax included a sales tax on the itemized delivery fee (the "Non-Disclosure Theory"), or, alternatively, (ii) clearly represented that the total sales tax included a sales tax on the delivery fee, but by doing so, impliedly represented that that delivery fee was taxable under Florida law (the "Affirmative Disclosure Theory").  Apart from contradicting one another,[13] these allegations do not identify a representation or omission likely to mislead to his or her detriment a consumer acting reasonably under the circumstances.

First, the Invoices accurately state the nature and amount of the retailer's charges, separately listing (a) the food price charged, (b) the delivery fee charged, (c) the total Florida sales tax charged, and (d) the total sales price.  Moreover, based on this information, a consumer could readily—as readily as he or she could for any other receipt—calculate that the total sales tax included a sales tax on the delivery fee, and a consumer acting reasonably would do so.[14]

Second, neither the alleged omission nor the alleged representation could deceive a reasonable consumer to his or her detriment.  A consumer who (1) under the Non-Disclosure Theory, mistakenly assumed—for reasons Plaintiffs do not explain—that the total sales tax shown on the Invoice did not include a sales tax on the delivery fee, or (2) under the Affirmative Disclosure Theory, mistakenly inferred that the delivery fee was taxable, would in either case necessarily believe that the total sales price of the pizza, which included the disputed tax—was *greater* than it would otherwise be.  However, a mistaken belief that a product is *more costly*

---

[13]  The Non-Disclosure Theory assumes that, despite the information in the Invoices, a consumer would assume the itemized delivery fee—unlike other items on the Invoices—was not taxed because, as (Plaintiffs imply) he would believe for unspecified reasons, delivery fees are not taxable.  The Affirmative Disclosure Theory assumes that, having no opinion one way or another on the taxability of delivery fees, the consumer would infer from the taxation of the itemized delivery fee that such fees are taxable.  Although not formally improper, *see* Fed. R. Civ. P. 8(d)(3), the contradictory nature of the two theories highlights the implausibility of both.

[14]  As to some orders, no calculation was required.  For pizzas obtained at no charge by redeeming Papa Rewards points, the delivery fee was admittedly the *only* charge other than the sales tax, *see* SAC ¶ 50, and nobody who examined such receipts could help seeing that Papa John's charged a sales tax on that fee.

12

would render the product *less attractive* to a rational consumer, and so render him or her *less likely* to purchase that product—not more so.   Thus, even if they could be plausibly be understood to induce consumers to make either assumption, the Invoices would have no tendency to mislead a rationale consumer into making a purchase.

Indeed, although they recite FDUTPA's causation element in conclusory fashion, *see Iqbal*, 556 U.S. at 678 (conclusory statement of the elements of a claim does not satisfy Rule 8(a)), Plaintiffs fail to allege that they—the Plaintiffs—were misled by the Invoices, or even that they read the Invoices before or when purchasing food for delivery from a Papa John's restaurant.[15]   Although deceptiveness under FDUTPA is determined objectively, based on whether a consumer acting reasonably in the circumstances would be misled, this omission is telling.   It confirms the absence of objective deceptiveness in the Invoices.

Third, as to the Non-Disclosure Theory, no statutory or common law basis exists for imposing a duty on retailers whose receipts already itemize (a) the food price, (b) the delivery fee, (c) the total sales tax, and (d) the total sales price, to include an additional, separate explanation or assertion of the taxability of each item upon which the total sales tax is calculated. *See Virgilio v. Ryland Grp., Inc.*, No. 6:08-CV-815-ORL-31GJK, 2009 WL 1606494, at *6 (M.D. Fla. June 8, 2009) (dismissing FDUTPA claim based on non-disclosure because "Defendants did not, as a matter of law, have an affirmative duty to disclose"), *aff'd in part*, 680 F.3d 1329, 1338 (11th Cir. 2012) (affirming dismissal of FDUTPA non-disclosure claim where the alleged affirmative duty of disclosure "did not exist under Florida law."). Rather, Florida law provides that receipts must—as Defendants' receipts admittedly did—separately state the sales

---

[15]   Moreover, as to at least some of the orders described in the SAC—those purchased after Plaintiffs filed this lawsuit—it is simply not possible that Plaintiffs were misled. *See, e.g.*, SAC ¶¶ 51 (June 16, 2014), 59 (July 12, 2014), 56 (Aug. 20, 2014).

Greenberg Traurig, P.A.

tax and add it to the total sales price.  *See* § 212.07(2), Fla. Stat.  By requiring and thus permitting this level of detail, the legislature has precluded a FDUTPA claim based on any purported confusion caused by compliance with its mandate.  *See* § 501.212(1), Fla. Stat. (FDUTPA does not apply to "[a]n act or practice required or specifically permitted by . . . state law.").  Finally, if accepted, Plaintiffs' contrary suggestion would render unlawful the almost universal practice of Florida retailers, whose receipts do not provide the expansive detail that Plaintiffs would mandate.  The Court should reject this change to Florida law and dismiss Counts III and IV. [16]

### C.    The SAC Fails to Allege Facts Showing Causation.

Plaintiffs' FDUTPA claims also fail because Plaintiffs have not alleged facts plausibly showing that the Invoices caused them harm.  "In order to state a FDUTPA claim for damages 'a plaintiff must show . . . that it has suffered actual damages *proximately caused* by the unlawful conduct.'"  *Britt Green Trucking, Inc. v. FedEx Nat., LTL, Inc.*, No. 8:09-cv-445-T-33TBM, 2014 WL 3417569, at *11 (M.D. Fla. July 14, 2014) (emphasis added). [17]  "'Actual damages' under FDUTPA must *directly* flow from the alleged deceptive act or unfair practice."  *Id.*  "For

---

[16]  For substantially the same reasons stated above, the Invoices cannot constitute an unfair trade practice under FDUTPA.  Moreover, because the Invoices are not likely to deceive reasonable consumers, they are not "likely to cause substantial injury to consumers which is not reasonably avoidable by consumers themselves and not outweighed by countervailing benefits to consumers or to competition."  *See In re Motions to Certify Classes Against Court Reporting Firms for Charges Relating to Word Indices*, 715 F. Supp. 2d 1265, 1277 (S.D. Fla. 2010) (quoting 15 U.S.C. § 45(n) (2014)), *aff'd sub nom. Webber v. Esquire Deposition Servs., LLC*, 439 F. App'x 849 (11th Cir. 2011); *see also* § 501.204(2), Fla. Stat.  (July 1, 2013); § 203(3)(b), Fla. Stat. (July 1, 2013).

[17]  *See also* § 501.211(2), Fla. Stat. ("In any action brought by a person who has suffered a loss *as a result of* a violation of this part, such person may recover actual damages.") (emphasis added); *Philip Morris USA Inc. v. Hines*, 883 So. 2d 292, 294 (Fla. 4th DCA 2003) (noting "the principle of causation" stated in Section 501.211(2)), *rev. denied*, 974 So. 2d 386 (2008); *SIG, Inc. v. AT & T Digital Life, Inc.*, 971 F. Supp. 2d 1178, 1196 n.13 (S.D. Fla. 2013) ("Causation is an element of a FDUTPA claim."); *O'Neill v. The Home Depot U.S.A., Inc.*, 243 F.R.D. 469, 480 (S.D. Fla. 2006) ("Under FDUTPA, proof of causation is required.").

purposes of recovery under FDUTPA, 'actual damages' do not include consequential damages." *Rollins*, 951 So. 2d at 869.

Plaintiffs do not allege that they relied on the Invoices[18] or that any representation or omission in the Invoices otherwise caused them to purchase or a pay a premium for Papa John's pizza.  Absent factual allegations to support a plausible theory of harm caused by the allegedly deceptive practices, the SAC merely recites these elements of a FDUTPA claim and must be dismissed.  *See SIG, Inc. v. AT & T Digital Life, Inc.*, 971 F. Supp. 2d at 1196 n.13 (dismissing FDUTPA claim because "Plaintiffs have not alleged how [the defendant's] representations caused Plaintiffs any damage after Plaintiffs heard them in December 2010.").[19]

---

[18]   Although reliance may not be a separate element of a FDUTPA claim, courts recognize that establishing causation—which *is* an element of a FDUTPA claim—is often impossible without a showing of reliance.  *See In re Motions to Certify*, 715 F. Supp. 2d at 1281 n.8 ("proof of reliance may be required under FDUTPA"), *aff'd sub nom. Webber v. Esquire Deposition Servs., LLC*, 439 F. App'x 849 (11th Cir. Aug. 31, 2011); *cf. Black Diamond Props., Inc. v. Haines*, 940 So. 2d 1176, 1179 (Fla. 5th DCA 2006) ("[A]lthough reliance might not be an element of [plaintiffs' FDUTPA] claim, each plaintiff still must demonstrate that the misrepresentation occurred and actually *caused* damage to him or her . . . .") (emphasis added); *cf. In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 119 n.6 (2d Cir. 2013), *cert. denied*, 134 S. Ct. 1938 (2014) (even where reliance is not an element of a claim, it may be "a necessary part of the causation theory advanced by the plaintiffs.").  Moreover, by itself, Plaintiffs' alleged overpayment does not show that the Invoices caused their alleged losses.  Plaintiffs have cited *Latman v. Costa Cruise Lines, N.V.*, 758 So. 2d 699 (Fla. 3d DCA 2000), and *Turner Greenberg Associates, Inc. v. Pathman*, 885 So. 2d 1004 (Fla. 4th DCA 2004), for the proposition that reliance and damages may be inferred when consumers parted with money for what was falsely represented as a pass-through charge.  But neither case eliminated FDUTPA's requirement of causation and damages, *see Miami Auto. Retail, Inc. v. Baldwin*, 97 So. 3d 846, 857 (Fla. 3d DCA 2012) ("FDUTPA requires proof of each individual plaintiff's actual (not consequential) damage and defendant's causation of damage"), *rev. denied*, 107 So. 3d 403 (Fla. Dec. 18, 2012), and neither is apposite here.  Both cases involved charges which were misrepresented as "pass-through" charges required to be remitted to third parties, but which were actually retained by the seller as profit.  Here, Plaintiffs do not allege any inaccuracy—*much less any deceptiveness*—in any implied representation that the sales tax on the delivery fee was collected as a sales tax to be passed-through to the State of Florida.

[19]   Some courts have recognized a narrow exception to the general rule that a deceptive practice cannot cause a plaintiff's damages unless the plaintiff himself relied on the deceptive practice.  *See, e.g., Fitzpatrick v. General Mills, Inc.*, 635 F.3d 1279, 1283 (11th Cir. Mar. 2011); *Nelson v. Mead Johnson Nutrition Co.*, 270 F.R.D. 689 (S.D. Fla. 2010).  *But see In re Sears, Roebuck & Co. Tools Mktg. & Sales Practices Litig.*, MDL-1703, 2012 WL 1015806, at *9–10 (N.D. Ill. Mar. 22, 2012); *Carrera v. Bayer Corp.*, 12-2621, 2014 WL 3887938, at *4 (3d Cir. May 2, 2014).  Here, however, Plaintiffs do not allege any of the factual predicates for this "market price inflation" theory.

**D.      The SAC Fails to Allege a Factual Basis for Vicarious Liability.**

Presumably for tactical reasons,[20] Plaintiffs do not directly contend that Defendants are vicariously liable for the conduct of each Franchisee.  However, even if they did so contend, the allegations in the SAC are insufficient to state a claim for vicarious liability.

First, Plaintiffs do not even attempt to allege that Defendants and each Franchisee manifested an intent that the Franchisee would act on their behalf, and the Franchise Agreement expressly disclaims such an intention.  *See* FA § 21(a); *Goldschmidt v. Holman*, 571 So. 2d 422, 424 n.5 (Fla. 1990) (stating elements of actual agency).

Second, Plaintiffs allege no facts that would satisfy—as to each Franchisee—Florida's test for apparent agency.  *See Mobil Oil Corp. v. Bransford*, 648 So. 2d 119, 121 (Fla. 1995).  In particular, Plaintiffs do not allege that (1) Defendants represented to Plaintiffs that—in addition to providing ordinary franchise support services—Defendants substantially controlled each Franchisee's business, or (2) Plaintiffs relied on such a representation.  *See id. at* 120–21 (no agency relationship where franchisor owned the property, required use of its trademarks and symbols and sale of its products, and sent representatives to the store to provide franchise support services, and franchise agreement expressly disclaimed intent to create agency relationship); *Estate of Miller v. Thrifty Rent-A-Car Sys., Inc.*, 637 F. Supp. 2d 1029, 1039–40 (M.D. Fla. 2009) (no agency relationship where franchise agreement imposed conditions "typical of a franchise relationship," including use of franchisor's reservation system: "[F]or tort liability to attach, the franchisor must make a representation [to the plaintiff] that goes beyond the basic

---

[20]   *See* ECF No. 18 (arguing that § 213.756 ,Fla. Stat.—which immunizes sellers from damages claims based on sales taxes remitted to the State—only protects actual sellers, such as PJUSA and the Franchisees).  As the statute immunizes Franchisee-Sellers from liability for such damages, derivative liability for the same immunized conduct is impossible.

Greenberg Traurig, P.A.

franchise relationship 'by indicating that the franchisor was in substantial control of the business.") (quoting *Bransford*, 648 So. 2d at 121); *Madison v. Hollywood Subs, Inc.*, 997 So. 2d 1270, 1270–71 (Fla. 4th DCA 2009) (no agency relationship where franchise agreement entitled franchisor to take various steps "to insure uniformity in the standardization of products and services offered by the [fast-food] restaurant" and designated franchisee as independent contractor).[21]

Third, assuming the principles could otherwise apply, Plaintiffs fail to allege facts that, if true, would suffice to hold Defendants liable as an employer or master under *respondeat superior* principles. *See Harper v. Toler*, 884 So. 2d 1124, 1130–31 (Fla. 2d DCA 2004) (reciting ten-factor test); Restatement (Second) of Agency § 202 (1958).   Indeed, with one exception—a Franchisee whose 16 Franchisee-Owned Restaurants allegedly *did not* charge sales taxes on delivery fees, *see* SAC ¶ 24—the SAC does not even mention individual Franchisees. In any event, under the Franchise Agreement, Defendants did not possess the requisite right to control to the details of the each Franchisee's business.  *See, e.g.*, FA § 21(a)–(b); *Harper*, 884 So. 2d at 1131 (noting that "the extent of control which, by the agreement [between the purported master and servant], the master may exercise over the details of the [purported servant's] work" is the most important factor in determining whether a master-servant relationship exists); *cf. Virgilio v. Ryland Grp., Inc.*, 680 F.3d 1329, 1336 (11th Cir. 2012) (district court properly dismissed vicarious liability claim that was "missing an essential

---

[21]  One commentator has observed that, following *Bransford*, "vicarious liability on the grounds of apparent agency may no longer exist as a viable cause of action in Florida.  In most cases, plaintiffs will not be able to prove apparent agency since [they] will not be able to establish the required element of the franchisor's representation of agency status." *David A. Beyer, Franchise Vicarious Liability in Florida: A Survey and Recent Developments*, 69 Fla. B. J. 62, 66 (1995).

Greenberg Traurig, P.A.

allegation—the critical element of an agency relationship—that the [purported] principal exercised, or had the ability to exercise, control over the [purported] agent.").[22]

## II.     Plaintiff, Timmons, Lacks Article III Standing to Assert a FDUTPA Claim Because the Invoices Have Not Injured Him.

Plaintiff, Timmons's, FDUTPA claim must be dismissed for lack of subject-matter jurisdiction under Rule 12(b)(1) because, based on Timmons's latest version of the relevant facts, the Invoices could not possibly have caused him any Article III injury.

To establish standing under Article III, a plaintiff must plead and prove (a) an "injury-in-fact," *i.e.*, an invasion of a legally protected interest that is both concrete and particularized and actual or imminent, not conjectural or hypothetical; (b) a causal connection between the asserted injury and the challenged conduct of the defendant; and (c) that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). A plaintiff lacks standing to challenge an act or practice to which he has not been subjected. *See Blum v. Yaretsky*, 457 U.S. 991, 999 (1982) ("Nor does a plaintiff who has been subject to injurious conduct of one kind possess by virtue of that injury the necessary stake in litigating conduct of another kind, although similar, to which he has not been subject."); *Garcia v. Kashi Co.*, 12-21678-CIV, 2014 WL 4392163, at *25–26 (S.D. Fla. Sept. 5, 2014) (plaintiff lacked standing to assert FDUTPA claim relating to products he did not purchase).

In his September 10, 2014 Affidavit (the "First Timmons Affidavit" [ECF No. 56-4]), Timmons described in detail an order (the "Timmons Order") that he claimed to have placed some time before this lawsuit filed. *See* Timmons Aff. ¶ 3–7 & Ex. A. Timmons swore that

---

[22] Plaintiffs' demand for punitive damages in Counts III–IV, *see* SAC at 28, 29, should also be stricken because punitive damages are unavailable under FDUTPA. *See Rollins, Inc. v. Heller*, 454 So. 2d 580, 585 (Fla. 3d DCA 1984); *Rollins, Inc. v. Black*, No. 3:03–cv–772-J-99, 2004 WL 5572913, at * 3 (M.D. Fla. Oct.8, 2004) (citing *Heindel v. Southside Chrvselr–Plymoth*, 476 So. 2d 266, 271 (Fla. 1st DCA 1985)); *Keegan v. American Honda Motor Co., Inc.*, 284 F.R.D. 504, 551 (C.D. Cal. 2012).

18

(a) he placed the Timmons Order online by logging onto the Papa John's customer account for his girlfriend, Wendy Bernstein, *id.* ¶ 3; and (b) at time he placed the Timmons Order, he "was not aware . . . that sales tax was being charged on delivery fees," *id.* ¶ 7.

Eight days later, however, Timmons retracted the latter averment, admitting that he did not know whether he had placed the Timmons Order before or after he became aware that Papa John's restaurants charged sales tax on delivery fees.[23]

After Defendants demonstrated that the Timmons Order was placed *several months after* Timmons learned that Papa John's restaurants charged a sales tax on delivery fees,[24] Timmons made a further retraction.  In a revised affidavit, Timmons dropped his previous averment that he paid for the Timmons Order at a time when he "was not aware that sales tax was being charged on delivery fees."  *See* Second Timmons Affidavit (ECF No. 57-17 at 17–21) ¶ 8 (averring, instead, that the Timmons Order was simply one of several orders on which Timmons paid the disputed tax).

By itself, Timmons's latest retraction calls into question whether he *ever* ordered from Papa John's at a time when he was unaware that Papa John's charged a sales tax on delivery fees.  But that conclusion is also supported by other evidence.  Timmons testified that he ordered from Papa John's exclusively through Bernstein's' online account.[25]   As that account was created several days *after* Timmons admittedly learned that Papa John's charged sales tax on delivery fees,[26] Timmons could not have ordered food for delivery from Papa John's before he

---

[23]   *See, e.g.*, Transcript of the September 18, 2014 Deposition of Sean Timmons ("Timmons Deposition" or "Timmons Dep." [ECF No. 56-3]) at 106:12–108:9.

[24]   *See* Defs.' Resp. in Opp'n to Pls.' Motion for Leave to Am. Compl. (ECF No. 56) at 5–7.

[25]   *See* Timmons Dep. at 240:24–241:21; 152:9–14; 140:20–142:1.

[26]   *Id.*

Greenberg Traurig, P.A.

became aware that Papa John's charged a sales tax on the delivery fee.  *See* ECF No. 56 at 5–7.

Thus, Timmons could not have been injured by any representations or omissions in the Invoices,

and Timmons's FDUTPA claim based those Invoices should be dismissed for failure to allege

the injury-in-fact required for a case or controversy under Article III.

### III.   Plaintiffs Lack Article III Standing to Seek Injunctive or Declaratory Relief Because They Have Not Alleged and Cannot Show a Likelihood of Future Injury from the Invoices.

Because injunctions regulate future conduct, a party seeking injunctive relief must allege

sufficient facts to show that he or she faces "a real and immediate threat of ***future*** harm."  *Elend*

*v. Basham*, 471 F.3d 1199, 1207 (11th Cir. 2006) (emphasis added); *see also Wooden v. Board of*

*Regents of Univ. Sys. of Ga.*, 247 F.3d 1262, 1284 (11th Cir.  2001).  "[A] plaintiff who has

standing to bring a damages claim does not automatically have standing to litigate a claim for

injunctive relief arising out of the same set of operative facts."  *Tucker v. Phyfer*, 819 F.2d 1030,

1034–35 (11th Cir. 1987).

"Although standing requirements in state courts are often less stringent than those of

Article III . . . standing in federal court is determined entirely by Article III and depends in no

degree on whether standing exists under state law."  *DDFA of S. Fla., Inc. v. Dunkin' Donuts,*

*Inc.*, No. 00-7455-CIV, 2002 WL 1187207, at *6 (S.D. Fla. May 22, 2002) (citation omitted).[27]

The Supreme Court reaffirmed this principle last term in *Hollingsworth v. Perry*, 133 S. Ct. 2652

(June 26, 2013).  The *Hollingsworth* Court rejected the contention that the appellants in that case

had standing to defend a state referendum because the California Constitution and the state

---

[27]  *See also Phillips Petrol. Co. v. Shutts*, 472 U.S. 797, 804 (1985) ("Standing to sue in any Article III court is, of course, a federal question."); *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1387 (2014) (distinguishing statutory standing from Article III standing); *Marty v. Anheuser-Busch Companies, LLC*, 13-23566-CIV, 2014 WL 4388415, at *20 n.14 (S.D. Fla. Sept. 5, 2014) ("[T]he intent of a state legislature cannot trump the constitutional requirements of Article III standing.").

Greenberg Traurig, P.A.

supreme court granted them that right, observing that "standing in federal court is a question of federal law, not state law. . . . the fact that a State thinks a private party should have standing to seek relief . . . cannot override [] settled law to the contrary." *Id*. at 2667.

Courts applying this rule have dismissed state-law consumer protection claims seeking injunctive relief where—as here—the plaintiffs are already aware of the deceptive conduct they seek to enjoin. *See, e.g., Camasta v. Jos. A. Bank Clothiers, Inc*., No. 13-2831, 2014 WL 3765935, at *7 (7th Cir. Aug. 1, 2014) (injunctive relief unavailable because consumer was aware of the defendant's sales practices and thus was "not likely to be harmed by the practices in the future"); *In re Gerber Probiotic Sales Practices Litig*., No. 12-835(JLL), 2014 WL 1310038, at *7 (D.N.J. Mar. 31, 2014) (dismissing claims for injunctive relief because there was no threat of future injury); *Allen v. Similasan Corp*., No. 12-CV-0376-BTM-WMC, 2013 WL 5436648, at *2 (S.D. Cal. Sept. 27, 2013) (same under FDUTPA); *Bohn v. Boiron, Inc.*, No. 11-CV-08704, 2013 WL 3975126, at *4 (N.D. Ill. Aug. 1, 2013) (same under Illinois Consumer Fraud Act).

Through their involvement in this case, Plaintiffs necessarily are aware of the alleged misrepresentations and omissions of which they complain.  As a result, Plaintiffs cannot possibly suffer ***future*** injury from these misrepresentations and omissions.  *See McNair v. Synapse Grp., Inc*., 672 F.3d 213, 223 (3d Cir. 2012) (rejecting argument that plaintiffs had standing because they might somehow be tricked by a deceptive offer in future, observing that "speaking generally, the law accords people the dignity of assuming that they act rationally, in light of the information they possess."); *Stoneback v. ArtsQuest*, No. 12–3287, 2013 WL 3090714, at *12 (E.D. Pa. June 20, 2013) (no standing because "plaintiffs now know the [true] origin" of the deceptively labeled products); *Cattie v. Wal–Mart Stores, Inc*., 504 F. Supp. 2d 939, 951 (S.D. Cal. 2007) (noting it was "unclear how prospective relief will redress [plaintiff's] injury, since

Greenberg Traurig, P.A.

she is now fully aware" of the truth behind the deceptive advertisement); *In re Intel Laptop Battery Litig.*, No. C-09–02889, 2011 WL 7290487, *2–3 (N.D. Cal. Apr. 7, 2011) ("If a plaintiff has knowledge of a defendant's practices, that plaintiff cannot have standing to seek injunctive relief to redress injuries caused by those practices, because the plaintiff's knowledge precludes him from showing a likelihood of being injured in the future by those practices.") (citation omitted); *Becker v. Skype Inc.*, No.: 5:12–CV–06477–EJD, 2014 WL 556697, at *3 (N.D. Cal. Feb. 10, 2014) ("Plaintiff simply cannot reasonably argue that he stands to be fooled again in the future."); *Castagnola v. Hewlett-Packard Co.*, No. 11–CV–05772, 2012 WL 2159385, at * 6 (N.D. Cal. June 13, 2012) (plaintiffs who "now have knowledge of the [undisclosed] terms and conditions of the program . . . have not alleged facts showing a realistic threat that they would be harmed by Defendants' conduct in the future.").[28]

Some litigants have tried to avoid this result by relying on the public policy underlying consumer protection statutes, or by arguing that state statutes granted them standing. Before *Hollingsworth*, a few district courts accepted such arguments and allowed actions for injunctive relief to proceed even in the absence of a threat of future injury. *See, e.g., Henderson v. Gruma Corp.*, No. CV 10-04173-AHM, 2011 WL 1362188 (C.D. Cal. Apr. 11, 2011). Moreover, at least two federal districts court in Florida relied on FDUTPA's language authorizing equitable relief for "aggrieved" persons[29] to reach a similar conclusion, noting that FDUTPA's standing

---

[28] *But cf. Richardson v. L'Oreal USA, Inc.*, 991 F. Supp. 2d 181, 194–95 (D.D.C. 2013); *Marty v. Anheuser-Busch Cos., LLC*, 2014 WL 4388415, at * 19–20 (dicta).

[29] *See* § 501.211, Fla. Stat. (1) ("anyone aggrieved by a violation of this part may bring an action to obtain a declaratory judgment that an act or practice violates this part and to enjoin a person who has violated, is violating, or is otherwise likely to violate this part.").

Greenberg Traurig, P.A.

requirements are less rigorous than those of Article III.[30]   Regardless, to the extent that these cases suggest that a state statute or policy can confer standing to seek injunctive relief in federal court without satisfying Article III requirements, they are no longer good law after *Hollingsworth*.[31]

In short, because they are plainly aware that Papa John's restaurants charge sales tax on delivery fees, Plaintiffs have not alleged and cannot prove a real and immediate threat that they will be harmed in the future by the allegedly deceptive Invoices.  Moreover, an order requiring a change in those Invoices would not redress the injury on which Plaintiffs' FDUTPA claim is based.  *See Veal v. Citrus World, Inc.*, 2:12-CV-801-IPJ, 2013 WL 120761, at *3–4 (N.D. Ala. Jan. 8, 2013) (plaintiff aware of alleged mislabeling lacked standing to seek injunctive relief because he could not show that his injury was likely to be redressed by a favorable ruling.).  For both reasons, Plaintiffs lack Article III standing to seek injunctive or declaratory relief under FDUTPA.[32]

---

[30]   *See Galstaldi v. Sunvest Cmtys. USA, LLC*, 637 F. Supp. 2d 1045, 1057–58 (S.D. Fla. 2009); *Carroll*, 2014 WL 1928669, at *4 (citing *Galstaldi*, 637 F. Supp. 2d at 1057–58).  The district judge in *Galstaldi* recognized in a later case that a plaintiff cannot seek an injunction in federal court without satisfying Article III requirements.  *See Keleceseny v. Chevron, U.S.A., Inc.*, 262 F.R.D. 660, 679 (S.D. Fla. 2009).

[31]   *See also Marty v. Anheuser-Busch Cos., LLC*, 2014 WL 4388415, at *21 ("The requirements of Article III standing do not change merely because a plaintiff is asserting claims under a state law consumer protection statute. . . . [T]he plaintiffs cannot rely on the text of a state statute to confer standing to seek injunctive relief in federal court."); *Burns v. Tristar Prods., Inc.*, No. 14-CV-749 BAS(DHB), 2014 WL 3728115, at *3 (S.D. Cal. July 25, 2014) ("To the extent that *Henderson* and other cases purport to create a public-policy exception to the standing requirement, that exception does not square with Article III's mandate."); *Richardson*, 991 F. Supp. 2d at 194 (declining to recognize a "public policy" exception to the requirements of Article III); *Jones v. ConAgra Foods, Inc.*, No. C-12-01633 CRB, 2014 WL 2702726, at *13 (N.D. Cal. June 13, 2014) ("[T]here is no way around the principle that a plaintiff must establish a 'real and immediate threat of repeated injury' to establish standing for injunctive relief."); *Garrison v. Whole Foods Mkt. Grp., Inc.*, 13-CV-05222-VC, 2014 WL 2451290, at *5 (N.D. Cal. June 2, 2014) ("[T]he power of federal courts is limited, and that power does not expand to accommodate the policy objectives underlying state law.").

[32]   Plaintiffs do not even allege that they intend to purchase food for delivery from Papa John's in the future.  For this reason too, their demand for injunctive relief must be dismissed.  *See Marty v. Anheuser-Busch Cos., LLC*, 2014 WL 4388415 at *21–22 (dismissing without prejudice for failure to allege an intent to purchase the defendant's product in the future.).

Greenberg Traurig, P.A.

## IV.     Count V Fails to State an Independent Claim for Relief.

The Court should also dismiss Court V ("Declaratory and Injunctive Relief") because it fails to state a separate claim for relief and erroneously implies that the Court could grant the requested remedy without a determination of liability under the substantive law governing Counts I through IV.[33]    Because injunctive and declaratory relief are remedies rather than independent claims, district courts in this circuit routinely dismiss separate "counts" seeking such relief.[34]   The Court should follow these well-reasoned authorities and dismiss Count V for failure to state a claim.

## CONCLUSION

For the reasons set forth above, the Court should dismiss Counts III and V and strike Plaintiffs' claims for injunctive and declaratory relief.

### [Attorney's Signature Appears on Following Page]

---

[33]  *See Alabama v. U.S. Army Corp of Eng'rs*, 424 F.3d 1117, 1127 (11th Cir. 2005) (a suit seeking a traditional injunction "must be based upon a cause of action . . . There is no such thing as a suit for a traditional injunction in the abstract."); *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1097 (11th Cir. 2004) ("For a traditional injunction to be even theoretically available, a plaintiff must be able to articulate a basis for relief that would withstand scrutiny under Fed. R. Civ. P. 12(b)(6) (failure to state a claim)."); *Paisey v. Vitale*, 807 F.2d 889, 892 (11th Cir. 1986) (no error in dismissing count for injunctive relief where the plaintiff failed to state a claim for relief).

[34]  *See, e.g., Diaz v. Deutsche Bank Nat. Trust Co.*, No. 14-cv-22583, 2014 WL 4351411, at *4 (S.D. Fla. Sept. 2, 2014) (dismissing counts for declaratory and injunctive relief because "the Court finds the equitable relief sought to be a remedy and not a separate cause of action"); *Venerus v. Avis Budget Car Rental, LLC*, No. 6:13-cv-921-Orl-36GJK, 2014 WL 4092323, at *7 (M.D. Fla. Aug. 18, 2014) (dismissing count for injunctive relief because "injunctive relief, as asserted here, is a type of remedy—not a separate cause of action."); *Eisenberg v. City of Miami Beach*, No. 13-23620, 1 F. Supp. 3d 1327, 1350  (S.D. Fla. Mar. 3, 2014) (dismissing count for declaratory relief because  "the equitable relief Plaintiffs seek is a remedy, not a separate cause of action."); *Perret v. Wyndham Vacation Resorts, Inc.*, 889 F. Supp. 2d 1333, 1346 (S.D. Fla. 2012) (dismissing count for injunctive and declaratory relief for failure to state a separate claim); *Kimerling Truck Parts, Inc. v. City of Birmingham*, No. CV–04–CO–00767–S, 2005 WL 4157440, at *6 (N.D. Ala. Nov. 17, 2005) (injunctive relief "must be based upon a claim which would withstand scrutiny under Fed. R. Civ. P. 12(b)(6)."), *aff'd sub nom. Kimerling Truck Parts, Inc. v. Feigelson*, 180 F. App'x 846, 847 (11th Cir. 2006) (per curiam) (affirming "based on [the district court's] well-reasoned memorandum opinion"); *Fastway Moving and Storage, Inc. v. Ugarte*, No. 13-60832, 2013 WL 3927687, at *2 (S.D. Fla. July 29, 2013) (dismissing claim for injunctive relief based on violation of Florida statute because "declaratory judgments and injunctions are equitable remedies, not causes of action. A plaintiff must prevail on an underlying claim in order to be entitled to either form of relief.") (citation omitted).

Greenberg Traurig, P.A.

Dated: November 17, 2014

Respectfully submitted,

/s/ Andrew J. Patch
David B. Weinstein
Florida Bar No. 604410
weinsteind@gtlaw.com
Andrew J. Patch
Florida Bar No. 0091577
patcha@gtlaw.com
**GREENBERG TRAURIG, P.A.**
625 East Twiggs Street, Suite 100
Tampa, Florida  33602
Telephone: (813) 318-5700
Facsimile: (813) 318-5900
*Trial Counsel for Defendants,*
*Papa John's International, Inc.,*
*and Papa John's USA, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on November 17, 2014, I electronically filed the foregoing Motion to Dismiss Counts III–V and to Strike Plaintiffs' Demand for Injunctive and Declaratory Relief with the Clerk of the Court by using the CM/ECF system.

/s/ Andrew J. Patch
Attorney

25