# IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

| | |
|---|---|
| BRUCE SCHOJAN, *et al.*, individually and on behalf of all others similarly situated, | |
| Plaintiffs, | No. 8:14-cv-1218-T33MAP |
| v. | |
| PAPA JOHN'S INTERNATIONAL, INC., and PAPA JOHN'S USA, INC., | |
| Defendants. | |

## DEFENDANTS, PAPA JOHN'S INTERNATIONAL AND PAPA JOHN'S USA'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

Pursuant to Local Rule 3.01(b), Defendants, Papa John's International, Inc. ("PJI") and Papa John's USA, Inc. ("PJUSA") (collectively, "Defendants"), respond in opposition to Plaintiff's Motion for Class Certification ("Certification Motion" or "Cert. Motion" [ECF No. 60]). For the reasons set forth below, Plaintiffs' Certification Motion must be denied.

## INTRODUCTION

Plaintiffs seek to certify a class consisting of thousands of individuals who ordered and purchased food for delivery from Papa John's restaurants. As set forth in their Second Amended Class Action Complaint ("SAC" [ECF No. 59]), Plaintiffs' claims rest on allegations related to the purported wrongful collection of sales tax on delivery fees.[1] Plaintiffs seek to recover their alleged economic losses—the approximately $0.21 sales tax on the delivery fee that each putative class member paid as part of a purchase of food for delivery—under Florida negligence law and the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), §§ 501.204 *et seq.*, Florida Statutes.

---

[1] Specifically, Plaintiffs allege that Defendants acted wrongfully by (a) misrepresenting that sales tax was owed to the State of Florida on delivery fees by Defendants and their franchisees; (b) collecting, as part of sales of food by Defendants' corporate-owned restaurants, a sales tax on delivery fees not required by Florida law; and (c) compelling franchisee restaurants to make the same misrepresentations and to collect the same sales tax.

Plaintiffs cannot carry their burden of proving that this case may be certified as a class action.  Among other things, the named plaintiffs lack sufficient credibility to pursue class claims, they lack standing to secure injunctive relief, and the action is predicated upon the particular circumstances of hundreds of thousands of unique commercial transactions, requiring numerous individualized inquiries.

## STATEMENT OF THE FACTS

## I.   DEFENDANTS' OPERATIONS.

PJUSA owns and operates 47 corporate pizza stores in Florida.  PJI is the franchisor of 227 additional pizza outlets in Florida.  The relationship between PJI and each of its franchisees is governed by a franchise agreement ("Franchise Agreement").[2]  Both corporate stores and franchisee stores deploy PJUSA's proprietary point-of-sale system PROFIT.[3]  PJUSA employees typically install PROFIT hardware and software at each new store location, although certified franchisee installers may also do so.[4]  Irrespective of who installs the PROFIT system, franchisees remain independent contractors responsible for tailoring PROFIT to their unique businesses.  *See* ECF No. 60-19.  Among numerous other settings, franchisees individually configure the PROFIT parameters for product pricing, delivery fees, delivery hours, tax rates for food and beverage, bracket taxation where appropriate (as in Florida), and the taxation of services such as delivery.[5]  Prior to the installation of PROFIT, each franchisee is provided with written forms where they can make elections about the configuration of PROFIT, including tax rates.[6]  Further, each new franchisee is given the

---

[2]  The Franchise Agreement is attached as Exhibit S to Plaintiffs' Certification Motion.  *See* ECF No. 60-19.

[3]  PJUSA's next generation point-of-sale system is FOCUS, which has functions akin to the latest version of PROFIT but also includes an enhanced graphical user interface.  *See* Transcript of [date] Deposition of Corporate Representative of Papa John's at 177:12-21 ("Corporate Representative Deposition" or "Corp. Rep. Depo.").  A copy of the Corporate Representative Deposition is attached as **Exhibit A**.

[4]  Corp. Rep. Depo. 177:12-21.

[5]  *Id.* at 81:7-82:7; 88:11-14; 196:21; 204:15-205:6.

[6]  *Id.* at 196:21-197:13.

opportunity to investigate proximate Papa John's stores to determine whether and to what extent the franchisee wants to mimic the PROFIT settings of that locale.  Current franchisees frequently replicate the settings of their other stores, with which they are intimately familiar.[7]  During the on-site installation of PROFIT, PJUSA installers once again inquire about tax rates and delivery fees, reminding the franchisees that they should consult an independent tax advisor.[8]  Once PROFIT has been installed, franchisees retain the ability to reconfigure the system.[9]  Where configurations cannot be made via local software menus, each franchisee has the right to contact a centralized HelpDesk and direct PJUSA to make changes to PROFIT.[10]  Among other things, Franchisees may mandate that HelpDesk alter the taxation of delivery fees.[11]

To avoid doubt, the Franchise Agreement explicitly provides that franchisees are "**solely responsible** for **inputting into and configuring the Information System** [which is defined to include the PROFIT System] to accommodate information of local applicability, **including state and local taxability of goods and services** sold or provided in the Restaurants and state and local sales taxes."  FA ¶ 10(ix).  TBaker Pizzamaker, LLC, the only franchisee to be deposed in this action, unequivocally agreed that proper taxation of goods and services fell within the province of the franchisee.[12]  In 2003, in response to franchisee inquiries, PJUSA distributed a letter to all franchisees disclaiming responsibility for PROFIT's taxation of delivery fees and suggesting that each franchisee consult an independent tax advisor: "Therefore, we wanted to alert all franchisees to contact their

---

[7]  *Id.* at 194:9-195:19.
[8]  *Id.* at 196:21-197:13.
[9]  *Id.* at 195:20-196:20.
[10]  *Id.* at 27:15-17.
[11]  *Id.* at 406:5-10.
[12]  Transcript of the August 20, 2014 Deposition of Tim Humes at 84:3–7.  A copy of the Deposition of Tim Humes is attached as **Exhibit B**.

accountant or tax professional to determine whether pizza delivery charges are subject to sales tax in their respective states."[13]

In 2005, PJUSA corporate stores instituted delivery fees.[14]   In conjunction with that initiative, PJUSA tax personnel researched the taxability of delivery fees in all states where Papa John's operates.   The research was conducted in accord with the tax department's standard protocol and included a review of all relevant statutes, regulations, case law, and administrative decisions identified on a comprehensive database of tax authorities.[15]   The results were incorporated into a software update that was automatically downloaded to every PROFIT system.[16]   However, any affected franchisees were ***contemporaneously notified*** of the update via a printout that was automatically generated when PROFIT was activated the morning after the update.   These franchisees retained both the contractual obligation and the absolute ability to alter the delivery fee tax settings via Helpdesk.[17]   Moreover, the 2005 update only impacted existing franchisees who charged delivery fees.[18]   Franchise stores established after 2005 or those which initiated delivery fees after 2005 continued to make individual elections regarding the taxation of delivery fees.[19]   Like all franchisees, they were consistently encouraged to do so in consultation with an independent tax expert.[20]

PJUSA and PJI do not render and never have rendered tax advice of any kind to franchisees.[21]   Any franchisee who contacts Helpdesk, the PJUSA tax department, or one  of PJUSA's dedicated franchise liaisons with tax inquiries is invariably informed that Papa John's corporate does not offer tax advice and that the franchisee should seek independent

---

[13]   Ltr. from Sheryl Ball, Senior Tax Director, to Papa John's Franchisee (May 8, 2003).  A copy of the letter is attached as **Exhibit C**.
[14]   Pursuant to the Franchise Agreements, franchisee stores could seek permission to charge delivery fees prior to 2005.  Corp. Rep. Depo. 266:18-24.
[15]   *Id.* at 406:17-409:2; 438:18-442:8.
[16]   *Id.* at 113:22-119:23.
[17]   *Id.* at 197:14-199:4.
[18]   *Id.* at 114:22-115:9.
[19]   *Id.* at 116:20-117:10.
[20]   *Id.* at 196:21-197:13.
[21]   *Id.* at 202:13-17; 405:9-13; 287:3-289:16.

counsel.[22]   Accordingly, franchisees are responsible for making their own taxing decisions, as demonstrated by the fact that one Papa John's franchisee has chosen not to tax delivery fees at any of its many store locations.

## II.   PLAINTIFFS SCHOJAN, TIMMONS, AND TOLLERTON.

On November 7, 2013, Plaintiff Bruce Schojan ordered pizza from a Florida Papa John's franchise via an internet application.[23]   The pizza was delivered to his home.   Because Schojan had previously accumulated sufficient Papa John's reward points, this particular order was free, except for a three-dollar delivery charge.[24]   Upon examining the receipt for his transaction, Schojan realized that Papa John's was collecting sales tax on delivery fees.   He reached this conclusion exclusively using information contained in the receipt, with no outside data, aid, expertise, or guidance.[25]   Indeed, he admits that he could have utilized any Papa John's receipt—whether for a free pizza or a full-priced pizza—to determine that delivery charges were being taxed at any time.[26]   Upon recognizing that Papa John's charged sales tax on delivery fees, Schojan conducted approximately thirty minutes of research regarding Florida tax regulations through a standard Internet search engine.   Based on the results of his limited queries, Schojan formed the belief that the taxation was "wrong."[27]

Three days later, on November 10, Schojan attended a social gathering which included his two friends and fellow class representatives: Christopher Tollerton and Sean Timmons.   Schojan informed Tollerton and Timmons that Papa John's was charging sales tax on delivery fees and apprised them of his belief that the taxation was improper.[28]

---

[22]  *Id.* at 202:13-17; 196:21-197:13.

[23]  *See* SAC ¶ 50; First Am. Compl. [ECF No. 2] ¶ 21; *see also* Transcript of the September 17, 2014 Deposition of Bruce Schojan ("Schojan Deposition" or "Schojan Dep.") at 95:16–97:4; 95:16–97:12.

[24]  *Id.* at 128:22–25; *See* SAC ¶ 50; First Am. Compl. ¶ 21.

[25]  Schojan Dep. at at 22:14–23; 51:9–22; 95:16–97:23; 126:17–21; 129:10–15.

[26]  *Id.* at 132:22–133:1; *see also id.* at 129:16–24.

[27]  *Id.* at 52:7–56:8.

[28]  *See* Transcript of the September 18, 2014 Deposition of Sean Timmons ("Timmons Deposition" or "Timmons Dep.") at 29:1–11; 32:20–38:10.   Transcript of the September 22, 2014 Deposition of Christopher Tollerton

Coincidentally, Tollerton had pre-ordered a Papa John's pizza to be delivered at that very November 10 meeting.[29]  By the time the pizza actually arrived, Tollerton had already been told that Papa John's charged sales tax on delivery fees.[30]  Nonetheless, he paid cash for the total amount due, including sales tax.[31]  Immediately after tendering payment, he analyzed the accompanying receipt to confirm that Papa John's collected sales tax on delivery charges.[32]  Like Schojan, Tollerton recognized the delivery sales tax using only the information contained in the four corners of the receipt, with no outside data, aid, expertise, or guidance.[33]  Tollerton also concedes that he could have identified the Papa John's delivery fee sales tax at any time, had he chosen to do so.[34]

Meanwhile, in the days following the November 10 meeting, Timmons claims to have unearthed a receipt from a prior Papa John's delivery which occurred several weeks earlier.[35]  Examining that receipt, Timmons verified that Papa John's charged sales tax on delivery fees.[36]  Once more, this verification was performed using only information appearing on the face of the receipt, with no outside data, aid, expertise, or guidance.[37]  The November 10 social gathering had at least one other notable participant: Tony Duran, the lawyer who ultimately referred Schojan, Tollerton, and Timmons to the law firm of Wagner Vaughan & McLaughlin, LLP.  After November 10, 2013, Schojan, Tollerton, and Timmons continued to order delivered pizza from Papa John's, despite knowing full well that delivery sales tax was

---

("Tollerton Deposition" or "Tollerton Dep.") at 63:15–73:24; 75:20–82:2; 92:18–22; 103:8–17; Schojan Dep. at 61:15–70:15.  Schojan and Timmons could not recall the exact date of the November 2013 gathering.

[29]  *Id.* at 66:21–67:6; 75:20–23; 77:5–8; 89:15–92:22; 201:20–102:13; 104:17–22; *cf.* Tollerton Affidaivt ¶ 3 *& Ex.* A; First. Am. Compl.  ¶ 21.

[30]  *Id*. at 66:17–69:2; 103:1–106:16; 121:16–122:8.

[31]  *Id*. at 102:21–103:18; 105:13–21; Tollerton Aff. ¶ 3.

[32]  *Id*. at 75:24–79:16; 105:22–106:6.

[33]  *Id.* at 77:24–78:23.

[34]  "And if you had chosen to, you could have used any Papa John's receipt that you ever received to determine that Papa John's was charging sales tax on delivery fees; yes?"  "Yes."  *Id*. at 79:17–80:1; *see also id*. at 80:18–22; 196:2–10; 40:5–10; 56:10–14.

[35]  Timmons Dep. at 43:10–45:21; 17:5–25; *cf*. 231:5–10.

[36]  *Id.* at 45:22–46:14.

[37]  *See id.* at 46:10–23.

being applied and despite their belief that the practice was "wrong."[38]   In fact, Timmons testified that he ordered Papa John's exclusively through the online account of his girlfriend, Wendy Bernstein, which wasn't even established until November 12, 2013.[39]

During the four months between their dialogue about Papa John's taxation and the commencement of this action, the class representatives made no effort to warn any other consumers about the contested taxes, never alerted Papa John's to their concerns, and failed to inform the FDOR or any other state agency about the allegedly improper collection.[40] Instead, each and every time the trio ordered from Papa John's in the post-November era, they voluntarily paid the sales tax without protest even though they contended that the receipt reflected an illicit charge.[41]   Several of these intentional post-November transactions form the basis for Plaintiffs' complaints.[42]

## III.   PLAINTIFFS ROBERTS AND BROWN.

The only information available concerning Roberts and Brown is set forth in their affidavits attached as Exhibit Q to the Certification Motion, which purport to describe Papa John's purchases.   The true circumstances of these transactions are unknown.   (ECF 60-17 at 26–34).   No further substantive information is provided as to either plaintiff, although both state that they are willing to appear for depositions.   *Id.*

### LEGAL STANDARD

"For a district court to certify a class action, the named plaintiffs must have standing, and the putative class must meet each of the requirements specified in Federal Rule of Civil Procedure 23(a), as well as at least one of the requirements set forth in Rule 23(b)."   *Vega v.*

---

[38]   *See e.g.*, Timmons Dep. at 48:9–14; 55:25–56:25; 62:12–63:23; 103:4–8; 105:12–17; 171:19–172:2; 235:20–24; First Am. Compl. ¶ 22; Tollerton Dep. at 95:4–13; 131:5–136:22; First Am. Compl. ¶¶ 23–24; Schojan Dep. at 97:20–99:17; 104:22–106:16; 124:8–21; 126:9–128:17; 135:3–16; 187:3–23; SAC ¶ 51.

[39]   *See* Defendants' Resp. in Opp'n to Mot. to Amend First Am. Compl. (ECF No. 56) at 5–7.

[40]   *See* Tollerton Dep. at 117:12–130:11; 136:23–138:10; Schojan Dep. at 104:13–19.

[41]   *See* Schojan Dep. at 98:21–105:10; 112:11-114:4; 121:3–124:17; 126:17–128:14; Tollerton Dep. at 129:12–136:22;  Timmons Dep. at 55:9–66:22.

[42]   *See* First Am. Compl. ¶ 22 (Mar. 24, 2014); SAC ¶ 51 (June 16, 2014); *see also* ECF No. 56 at 5–7 (showing that the transaction described in First Timmons Affidavit occurred in January 2014).

*T–Mobile USA, Inc.*, 564 F.3d 1256, 1265 (11th Cir. 2009) (quoting *Klay v. Humana, Inc.*, 382 F.3d 1241, 1250 (11th Cir. 2004)).  "The burden of proof to establish the propriety of class certification rests with the advocate of the class, and failure to establish any one of the four Rule 23(a) factors and at least one of the alternative requirements of Rule 23(b) precludes class certification." *Stalley v. ADS Alliance Data Sys., Inc.*, 296 F.R.D. 670, 677 (M.D. Fla. 2013).  Thus, party seeking certification must "affirmatively demonstrate[s] his compliance' with Rule 23." *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013) (quoting *Wal–Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551–52 (2011) (observing that Rule 23 "does not set forth a mere pleading standard")).

## ARGUMENT

## I.   THE PROPOSED CLASS REPRESENTATIVES ARE NEITHER ADEQUATE NOR TYPICAL.

Initially, the named Plaintiffs have not established—and several of them *cannot* establish—that they meet the requirements of Rule 23(a).  As the Supreme Court has explained, "Rule 23(a) ensures that the named plaintiffs are appropriate representatives of the class whose claims they wish to litigate." *Dukes*, 131 S. Ct. at 2550 (quotation marks omitted).  Based on the discovery conducted to date, however, it is clear that Plaintiffs have failed to carry this burden.

### A.   Plaintiffs Schojan, Tollerton, and Timmons Cannot Adequately Defend the Interests of the Proposed Class.

The discovery conducted thus far has cast significant doubt on Schojan, Tollerton, and Timmons' capacity to adequately represent the class and prosecute the action.  *See* Fed. R. Civ. P. 23(a)(4); *Busby v. JRHBW Realty, Inc.*, 513 F.3d 1314, 1323 (11th Cir. 2008) (citation and quotation marks omitted).

First, both Tollerton and Timmons have submitted sworn statements to this Court that were materially inaccurate.  In their initial affidavits, each maintained that, at the time they

paid for the delivery orders described in their affidavits, they were not aware that Papa John's taxed delivery fees.  First Timmons Aff. ¶ 7; Tollerton Aff. ¶ 7.  However, Timmons' deposition testimony and related order history reveal that the transaction described in his affidavit took place in January 2014, nearly two months after he learned that Papa John's charged sales tax on delivery fees.  *See* ECF No. 56 at 5-7.  Hence, contrary to his first affidavit, he obviously knew about the tax when he paid for the pizza.  Timmons' misstatement was troubling enough to prompt Plaintiffs' counsel to submit a revised affidavit.

Similarly, Tollerton was told that Papa John's charges sales tax on delivery fees *before* he paid for the pizza at the November 10 meeting, which is the transaction enumerated in his affidavit.[43]  He now contends that he only "knew" that Schojan had "told him" about the sales tax on delivery fees at the time he paid for the pizza, but needed to corroborate by analyzing the receipt.[44]  Either way, the testimony is inconsistent with his unequivocal affidavit representation.  In addition, other factors call into question the ability of these plaintiffs to serve as adequate class representatives.  For example, all three have been subject to recent garnishments, raising monetary issues that may impede their ability to appropriately represent the class.[45]  All three have also proffered dubious testimony under oath.  In fact, one at first claimed that he could not recall whether he had ever been arrested, and then conceded the fact but claimed to have virtually no memory of the circumstances or even the result.  Under such circumstances, this Court should find that Plaintiffs Schojan, Tollerton, and Timmons are incapable of fairly and adequately representing the interests of the class.

### B.  Plaintiffs Schojan, Tollerton, And Timmons Are Subject to Unique Defenses, Rendering Them Atypical of the Proposed Class.

---

[43]  See Tollerton Dep. at 66:17–69:10; 89:23–90:3; 103:8–106:16; 121:16–122:8.

[44]  Tollerton Dep. at 103:19–106:16.

[45]  *See* Schojan Dep. at 172:1–173:2; Tollerton Dep. at 180:10–185:11; Timmons Dep. at 189:23–195:3.

Florida law is clear that money voluntarily paid under a claim of right, with full knowledge of the material facts, cannot be recovered merely because the paying party, at the time of the payment, mistook the law as to his liability to pay. *See City of Miami v. Keton*, 115 So. 2d 547, 551 (Fla. 1959).[46]  Here, Schojan, Tollerton and Timmons all admitted (a) each and every time they ordered from Papa John's they understood the amount that was due for food; (b) Each and every time they ordered from Papa John's they understood the amount of sales tax that was due;  (c) cach and every time they ordered from Papa John's they voluntarily chose to pay the amounts on the receipt.[47]   Further, Schojan, Tollerton, and Timmons all continued to order Papa John's pizza after they realized that Papa John's collected sales tax on delivery fees and concluded that the practice was unlawful.  Each time, they nonetheless paid the tax.   It is well-settled that "[t]ypicality will not be present . . . if the class representative's claim is subject to unique defenses that will preoccupy the litigation to the detriment of absent class members." *Muzuco v. Re$ubmitit, LLC*, 297 F.R.D. 504, 516 (S.D. Fla. 2013).  Certification is improper due to the underlying "danger that absent class members will suffer if their representative is preoccupied with defenses unique to it." *Dupler v. Costco Wholesale Corp.*, 249 F.R.D. 29, 38 (E.D.N.Y 2008).[48]  Here, Schojan, Timmons, and Tollerton's clear admissions of voluntary payment render them atypical of the proposed class and unsuitable to serve as class representatives.[49]

---

[46]  *See also Hassen v. Mediaone of Greater Fla., Inc.*, 751 So. 2d 1289 (Fla. 1st DCA 2000); *Hall v. Humana Hosp. Daytona Beach*, 686 So. 2d 653, 657 & n.7 (Fla. 5th DCA 1996).

[47]   *See* Shojan Dep. at 121:3–124:7; Tollerton Dep. at 112:18–116:14; *cf.* Timmons Dep. at 56:7–66:19.  Mr. Schojan's admission is representative:  "You voluntarily chose to pay the food charge, delivery fee, and sales tax for your February 4, 2013 order because you wanted the Papa John's pizza, correct?"  "Yes."  Schojan Dep. at 113:1–5.

[48]  Because the doctrine is concerned with the danger of unnecessary litigation, "[t]he unique defense does not have to be established in order to render the representative atypical; it is sufficient that the defendants show that it is meritorious enough to require the plaintiff to devote considerable time to rebut [it]."  *Mazzei v. Money Store*, 288 F.R.D. 45, 58 (S.D.N.Y. 2012) (quotation marks omitted).

[49]   *See, e.g.*, *Gary Plastic*, 903 F.2d at 179–80; *Newman v. RCN Telecom Servs., Inc.*, 238 F.R.D. 57, 78 (S.D.N.Y. 2006); *see also In re Currency Conversion Fee Antitrust Litig.*, 230 F.R.D. 303, 308 (S.D.N.Y. 2004); *Dillon v. U–A Columbia Cablevision of Westchester, Inc.*, 100 N.Y.2d 525, 526 (2003).

**C.    Discovery Is Required as to Roberts and Brown Before the Court Can Determine Whether They Are Appropriate Class Representatives.**

Roberts and Brown were added to this action only in the Second Amended Complaint. While Roberts and Brown have both submitted affidavits in support of their qualifications, Defendants have not yet had the opportunity to conduct discovery as to either of them due to the lateness of the amendment.   Further, the parties have been engaged in settlement discussions and Defendants do not wish to "poison the well" through adversarial examinations and other discovery that may ultimately prove unnecessary.

It is, of course, Plaintiffs' burden to establish that the requirements of Rule 23(a) have been satisfied, including typicality and adequacy.  *See Wal-Mart*, 131 S. Ct. at 2551.  In the absence of any discovery as to either Roberts or Brown, this Court should find that Plaintiffs have failed to carry their burden.  *See Spinelli v. Capital One Bank*, No. 8:08–cv–132–T–33EAJ, 2009 WL 700705, at *8 (M.D. Fla. Mar. 14, 2009).  This is particularly true in light of the troubling inaccuracies and revelations concerning voluntary payment discovered in the affidavits submitted by Timmons and Tollerton.   At a minimum, this Court should deny certification, without prejudice, pending further discovery into the facts surrounding Roberts' and Browns' alleged purchases and their adequacy to serve as class representatives.[50]

## II.    MEMBERS OF THE PROPOSED CLASS WHO PAID FOR THEIR ORDERS BY CASH ARE NOT CLEARLY ASCERTAINABLE.

An important requirement of Rule 23 is that the proposed class must be "adequately defined and clearly ascertainable," which requires the plaintiff to prove that "the Court can determine whether a given person is a class member through ***administratively feasible methods***."  *Bilotta v. Citizens Info. Assocs.*, LLC, No. 8:13–cv–2811–T–30TGW, 2014 WL 2050853, at *2 (M.D. Fla. May 19, 2014) (emphasis added).

---

[50]  *See, e.g.*, *Spinelli*, 2009 WL 700705, at *1–2; *Gustin v. Hoffman*, No. 6:08–cv–57–Orl–31DAB, 2008 WL 4821330, at *2 (M.D. Fla. Oct. 28, 2008); *see also Burton v. District of Columbia*, 277 F.R.D. 224, 230–31 (D.D.C. 2011).

Plaintiffs seek to certify a class consisting of all persons or entities who "ordered Papa John's food for delivery on or after March 28, 2010, and who was charged ***and thereafter paid*** sales tax on a delivery fee . . . ." Motion, at p. 9 (emphasis added).  Thus, as several of the proposed class representatives have admitted, they seek damages on behalf of the person who paid for the sales tax, irrespective of the orderer's identity.  Conversely, they admit that would not seek damages for instances where they ordered pizza, but someone else paid for it.  Hence, per plaintiffs' own theory, ***payors***—not ***orderers***—are the class members.  Yet Plaintiffs cannot set forth an administratively feasible method to identify all persons who paid for their delivery order.  Plaintiffs assert in their Motion only that "[m]anagement of this case as a class action presents no unusual difficulties" because the PROFIT system "can identify the name, address, and telephone number for every individual who placed an order for delivery in Florida." Motion, at p. 24.  And while it is true that PROFIT records the name of individuals who place orders, it does not necessarily record the name of the payor.  Where payment was made via credit card, payor identity may be available.  But in the large number of instances where payment is made with cash, PROFIT contains no information about the payor.  Once a pizza is delivered to the orderer's address, it may be paid for by the orderer, the orderer's family, the orderer's friends or colleagues or acquaintances, the orderer's business, any combination of those parties, or someone else entirely.  It is not uncommon for a single orderer to collect cash from a number of other people to pay for pizza.  Tollerton himself recounted instances where he did exactly that.[51]  In sum, it is virtually ***impossible*** to identify the large volume of individuals who actually paid cash for delivered pizza.

## III.   INDIVIDUAL ISSUES PREDOMINATE OVER COMMON ISSUES, PRECLUDING CERTIFICATION UNDER RULE 23(b)(3).

---

[51]   *See* Tollerton Dep. at 152:4–154:25.

"In order to meet the predominance requirement of Rule 23(b)(3), a plaintiff must establish that the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, . . . predominate over those issues that are subject only to individualized proof." *Visa*, 280 F.3d at 136 (quotation marks omitted). "Of course, to find predominance, a Court must consider the elements of each cause of action, and determine whether those elements can be satisfied by common, class-wide proof." *In re Currency Conversion Fee Antitrust Litig.*, 230 F.R.D. 303, 309–10 (S.D.N.Y. 2004).[52]   Here, consideration of the elements of Plaintiffs' negligence and FDUTPA claims makes clear that individual issues predominate over the common issues between the members of the class.

### A.   The Elements of Plaintiffs' Causes of Action.

To prevail on their negligence claims, Plaintiffs must prove a legally recognized duty. In Florida, there is no general duty to exercise reasonable care to protect third persons from the risk of purely economic loss. *See Perry v. Schumacher Grp. of La.*, No. 2:13–cv–36–FtM–29DNF, 2014 WL 988751, at *4 (M.D. Fla. March 13, 2014) (citing *Monroe v. Sarasota Cnty. Sch. Bd.*, 746 So. 2d 530, 531 (Fla. 2d DCA 1999); *Virgilio v. Ryland Grp., Inc.*, 695 F. Supp. 2d 1276, 1282 (M.D. Fla. 2010), *aff'd*, 680 F.3d 1329 (11th Cir. 2012)[53]   Among the recognized exceptions, Florida allows recovery of economic losses for negligent misrepresentation, which requires proof that injury resulted to a party acting in justifiable *reliance* upon the misrepresentation. *See Tiara Condo. Ass'n, Inc. v. Marsh & McLennan Cos.*, 607 F.3d 742, 747 (11th Cir. 2010), *certified question answered*, 110 So. 3d 399 (Fla.

---

[52]   *See also In re Linerboard Antitrust Litig.*, 305 F.3d 145, 156 (3d Cir. 2002).

[53]   Because this general rule is not based on the "economic loss doctrine," *see Monroe*, 746 So. 2d at 533, the Florida Supreme Court's recent decision in *Tiara Condominium Association, Inc. v. Marsh & McLennan Companies, Inc.*, 110 So. 3d 399, 402 (Fla. 2013), abrogating the "contractual privity" economic loss doctrine, does not affect its continuing vitality. *See id.* at 408–09 (Pariente, J., concurring).

2013).[54]  Because plaintiffs do not and cannot assert physical or bodily injury or harm, they must proceed under a theory of negligent misrepresentation.

"A claim for damages under FDUTPA has three elements: '(1) a deceptive act or unfair practice; (2) *causation*; and (3) actual damages.'" *Eli Research, LLC v. Must Have Info Inc.*, No. 2:13–cv–695–FtM–38CM, 2014 WL 4540110, at *8 (M.D. Fla. Sept. 11, 2014) (quoting *City First Mortg. Corp. v. Barton*, 988 So. 2d 82 (Fla. 4th DCA 2008)). "[D]eception occurs if there is a representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment." *Zlotnick v. Premier Sales Grp., Inc.*, 480 F.3d 1281, 1284 (11th Cir. 2007).

**B.  Proof of Reliance, Causation, and Injury Is Required as to Each Class Member.**

**1.  Reliance.[55]**

Because Plaintiffs must proceed under a theory of negligent misrepresentation, they must establish that each and every member of the class relied on the alleged misrepresentation regarding taxation of delivery fees.  This alone precludes class certification.[56]  Nor can Plaintiffs contend that reliance can properly be assumed from payment.[57]  The testimony of

---

[54]  *See also Butler v. Yusem*, 44 So. 3d 102, 105 (Fla. 2010); *First Fla. Bank, N.A. v. Max Mitchell & Co.*, 558 So. 2d 9, 15 (Fla. 1990); *Simon v. Celebration Co.*, 883 So. 2d 826, 832 (Fla. 5th DCA 2004).

[55]  Although reliance may not be a separate element of a FDUTPA claim, courts recognize that establishing causation—which *is* an element of a FDUTPA claim—is often impossible without a showing of reliance.  *See In re Motions to Certify*, 715 F. Supp. 2d at 1281 n.8, *aff'd sub nom. Webber v. Esquire Deposition Servs., LLC*, 439 F. App'x 849 (11th Cir. Aug. 31, 2011); *cf. Black Diamond Props., Inc. v. Haines*, 940 So. 2d 1176, 1179 (Fla. 5th DCA 2006).

[56]  *See Sandwich Chef of Texas, Inc. v. Reliance Nat'l Indem. Ins. Co.*, 319 F.3d 205, 220 (5th Cir. 2003) ("A class cannot be certified when evidence of individual reliance will be necessary."); *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 435 (4th Cir.2003) ("[T]he reliance element of . . . fraud and negligent misrepresentation claims is not readily susceptible to class-wide proof; rather, proof of reasonable reliance . . . depends upon a fact-intensive inquiry into what information each plaintiff actually had.").

[57]  Neither *Latman v. Costa Cruise Lines, N.V.*, 758 So. 2d 699 (Fla. 3d DCA 2000), nor *Turner Greenberg Associates, Inc. v. Pathman*, 885 So. 2d 1004 (Fla. 4th DCA 2004) eliminated FDUTPA's requirement of causation and damages, *see Miami Auto. Retail, Inc. v. Baldwin*, 97 So. 3d 846, 857 (Fla. 3d DCA 2012) ("FDUTPA requires proof of each individual plaintiff's actual (not consequential) damage and defendant's causation of damage"), *rev. denied*, 107 So. 3d 403 (Fla. Dec. 18, 2012), and neither is apposite here, where—like the named Plaintiffs—putative class members purchase a products for various reasons unrelated to the alleged misrepresentation.  *See also Philip Morris USA Inc. v. Hines*, 883 So. 2d 292, 294 (Fla. 4th DCA 2003).

the class representatives themselves vitiates that argument.  They independently discovered the taxation, concluded that the Papa John's receipt falsely represented the tax due, and nonetheless continued to order and pay for delivered pizzas.  Their payment clearly was not a product of reliance on a statement they believed to be false.  Rather, they ordered the pizza and paid because they liked the taste.  Papa John's is entitled to determine how many other class members did exactly the same.

## 2.  Causation and Injury.

Courts across the country have repeatedly recognized that a plaintiff cannot establish the required causal link between the alleged misrepresentation or concealment and their injuries where they continued to purchase the product even after learning the "truth."  A plaintiffs' continued purchase with knowledge of the truth establishes that even without the alleged deception, the plaintiff would still have purchased the product in any event.  Thus, the plaintiff cannot demonstrate that his or her injuries were caused by the alleged deception. *See, e.g.*, *Prohias v. Pfizer, Inc.*, 485 F. Supp. 2d 1329, 1335–36 (S.D. Fla. 2007) (plaintiffs' continuing purchases defeated liability).  Consistent with this authority, in denying class certification in another case, the Second Circuit relied in part on the fact that three of six putative class representatives—like the named plaintiffs here—continued to purchase a product even after filing a complaint alleging that defendants' material misrepresentations regarding the health benefits of the product caused them to overpay.  As the court recognized, the continued purchases indicated that the plaintiffs had other reasons to purchase the product, independent of the alleged deception.  *See McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215, 220 (2d Cir. 2008). Here, individualized proof is needed to demonstrate that each member of the putative class completed a delivery transaction because of the alleged misrepresentations, rather than for some other reason—for example, because they preferred the taste or ingredients of Papa John's pizza, the proximity of a Papa John's restaurant to his residence.

### C.   Class Treatment Will Require an Intensive Factual Inquiry into the Background and Taxing Practices of Each Store and Each Franchisee.

Each Plaintiff—and each member of the proposed class—must demonstrate causation, *i.e.*, that Defendants' actions or representations caused his or her injuries.   Plaintiffs' allegations are directed at PJUSA and PJI.   Plaintiffs contend that PJUSA and PJI "caused" the franchisees to tax delivery charges.   Because there are 227 franchisee stores in Florida and only 47 corporate stores, the vast majority of class claims will come from purchases made at franchises.   And for each customer who ordered from a franchisee store, numerous individualized inquiries will be required to determine the extent to which Defendants' actions "caused" the tax.   Before causation could be determined, the following questions would have be answered as to ***each*** franchisee and ***each*** store: (1) How did the franchisee fill out its PROFIT form(s)?   (2) What direction did the franchisee give to corporate regarding the configuration of PROFIT?   (3) How did the franchisee determine which store settings to mimic?   (4) What conversations did the franchisee have with corporate or other franchisees during the PROFIT installation?   (5) Did the franchisee consult with an independent tax advisor?   (6) What information, if any, regarding taxation did the franchisee obtain from corporate or other franchisees?   (7) What were the franchisees interactions with Helpdesk? (8) Was the particular store in existence when the 2005 update was disseminated?   (9) How did the franchisee respond to the notification of the 2005 update?   All of the above questions would have to be analyzed for each Florida franchisee against the backdrop of the franchisees' clear contractual obligation to configure the local tax elements of PROFIT.   Such individual questions would predominate over common ones in any attempt to resolve this matter as a class action, and they are not issues that can be resolved through "common, class-wide proof."   *In re Currency Conversion Fee Antitrust Litig.*, 230 F.R.D. at 309–10.

16

### D.  Defendants' Affirmative Defenses Present Individualized Questions.

The Rules Enabling Act guarantees Defendants' right to litigate their defenses to liability as to each class member.[58]   The Due Process Clause likewise guarantees every litigant the opportunity to present its case on the merits.[59]   Accordingly, determining whether common questions predominate under Rule 23(b)(3) requires consideration of whether the resolution of Defendants' affirmative defenses turns on facts specific to individual class members.  As discussed below, the affirmative defenses most likely to apply to a significant number of class members—the voluntary payment doctrine, exhaustion of administrative remedies, and assumption of risk or comparative fault—will necessarily require individualized, fact-intensive inquiries.

### 1.     Voluntary payment doctrine.

Florida law prohibits the recovery of money paid with full knowledge of the material facts merely because the payor incorrectly believed that he was required by law to pay.  *See Keton*, 115 So. 2d at 551.   Courts have held that common issues do not predominate where the voluntary payment defense cannot be adjudicated based on class-wide evidence.  *See, e.g., Vaccariello v. XM Satellite Radio, Inc.*, 295 F.R.D. 62, 68-69, 73-74 (S.D.N.Y. 2013); *Camafel Bldg. Inspections, Inc. v. Bellsouth Adver. & Publ'g Corp.*, No. 1:06-CV-1501-JEC, 2008 WL 649778, *9 (N.D. Ga. Mar. 7, 2008).   That is the precise circumstance here; Defendants are entitled to enquire into each class member's awareness of the tax they were paying and the circumstances under which they paid it.  After all, Schojan, Tollerton, and

---

[58]   *See Wal–Mart*, 131 S. Ct. at 2561; *Monaco v. Bear Stearns Cos., Inc.*, 09-cv-05438-SJO, 2012 WL 10006987 at *9 (C.D. Cal. Dec. 10, 2012) (citing *Wal–Mart*, 131 S.Ct. at 2561); *cf. Tuscumbia City Sch. Sys. v. Pharmacia Corp.*, No. 12–cv–332–NW, 2013 WL 3242854, at *8 (N.D. Ala. June 30, 2013); 1 McLaughlin on Class Actions § 5:43 (10th ed.) ("The right of a defendant to assert any available affirmative defense against each and every class member is guaranteed by the Rules Enabling Act.") (citing *Wal–Mart*, 131 S. Ct. at 2561).

[59]   *See Amendment Lindsey v. Normet*, 405 U.S. 56, 66 (1972) ("Due process requires that there be an opportunity to present every available defense"); *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 192 (3d Cir. 2001), *as amended*, (Oct. 16, 2001) (defendants possess a due process right "to raise individual defenses against each class member").

Timmons each admitted that they knew the amount of the tax and voluntarily agreed to pay it every time they ordered from Papa John's, which is all that is required to invoke voluntary payment.  Further, they continued to pay even after they unilaterally recognized the sales tax on delivery fees.  Countless other class members may have paid under similar circumstances.

### 2.   Exhaustion of administrative remedies.

Remedies for erroneously collected taxes are permitted only as authorized by the Florida Legislature.   Pertinent to this case, Florida law allows a taxpayer to seek a refund of tax payments made in error by filing an application for refund with the FDOR within three years.  *See* § 215.26(1)–(2), Fla. Stat.  The administrative remedy provided by section 215.26 is ***exclusive***.  § 215.26(4), Fla. Stat. ("This section is the exclusive procedure and remedy for refund claims between individual funds and accounts in the State Treasury.").  Thus, before contesting the legality of a refund denial or tax assessment in court, the taxpayer must seek an administrative refund from the FDOR.  Defendants must be entitled to inquire into this issue as to each class member.

### 3.   Assumption of risk and comparative fault.

Under Florida's comparative fault statute, Defendants would be entitled to establish the percentage of fault attributable to other parties, such as the franchisee who charged and collected the tax, as well as the class member himself or herself.   § 768.81(2), Fla. Stat.; § 768.81(3)(a), Fla. Stat.; *see also Saunders v. Dickens*, No. SC12–2314, 2014 WL 3361813, at *2 n.2 (Fla. July 10, 2014).  Indeed, Defendants would be entitled to demonstrate whether the class member was aware of the tax and thus "assumed the risk" of wrongfully paying it.[60]

---

[60]   *See Denton v. R.J. Reynolds Tobacco Co.*, Case No. 3:09–cv–10036–WGY–JBT, 2013 WL 6152364, at *12 (M.D. Fla. Nov. 22, 2013) (affirming jury's allocation of 100% of the fault to decedent based on record evidence that she "knew the risks associated with smoking [and] assumed those risks"); *see also McGraw v. R & R Invest., Ltd.*, 877 So. 2d 886, 891 (Fla. 2004) ("[T]he affirmative defense of implied assumption of risk is now subsumed within the doctrine of comparative negligence.").

## IV.    INDIVIDUAL ISSUES PREVENT CERTIFICATION UNDER RULE 23(b)(2).

As an initial matter, to establish a 23(b)(2) class, the plaintiffs must have standing to seek injunctive or declaratory relief.  *See Underwood v. Manfre*, No. 3:13–cv–192–J–34PDB, 2014 WL 67644, at *3 n.2 (M.D. Fla. Jan. 8, 2014).  And "in an action for injunctive relief, a plaintiff has standing only if the plaintiff establishes 'a real and immediate—as opposed to a merely conjectural or hypothetical—threat of future injury.'"  *Id*.  Here, however, the proposed class representatives have not shown—and cannot show—a substantial and imminent threat of being injured in the future by the allegedly unlawful practice.  To the contrary, because Plaintiffs are fully aware the tax, they can avoid it in the future and cannot have standing to seek injunctive relief to redress injuries caused by those practices.[61]  Next, class-based injunctive relief under Rule 23(b)(2) is generally unnecessary and therefore inappropriate when—as here—an individual injunction would necessarily inure to the benefit of the propose class members.  *See M.R. v. Bd. of Sch. Comm'rs of Mobile Cnty.,* 286 F.R.D. 510, 518–21 (S.D. Ala. 2012).  By its very nature, an individual decree enjoining Defendants from charging the allegedly unlawful sales tax would put an end to the practice, and so amount to exactly the same relief as an injunction for the entire proposed class.    Finally, "certification under Rule 23(b)(2) is not appropriate when each class member would be entitled to an individualized award of money damages."  *Amarelis v. Notter Sch. of Culinary Arts, LLC*, No. 6:13–cv–54–Orl–31KRS, 2013 WL 5798573, at *7 (M.D. Fla. Oct. 28, 2013) (citing *Wal-Mart*, 131 S. Ct. at 2775).  When, as here, the primary relief sought is monetary damages and individual facts are required to determine the amount of relief each class member would be entitled to, certification under subsection (b)(2) is simply not appropriate.

---

[61]  *See, e.g.*, *In re Intel Laptop Battery Litig.*, No. C-09–02889, 2011 WL 7290487, at *2-*3 (N.D. Cal. Apr. 7, 2011) ("If a plaintiff has knowledge of a defendant's practices, that plaintiff cannot have standing to seek injunctive relief to redress injuries caused by those practices, because the plaintiff's knowledge precludes him from showing a likelihood of being injured in the future by those practices."); *see also* ECF No. 67 at 20–23 (collecting cases).

*See DWFII Corp. v. State Farm Mut. Auto. Ins. Co.*, 469 F. App'x 762, 765 (11th Cir. 2012); *Cardiovascular Care of Sarasota, P.A. v. Cardinal Health, Inc.*, No. 8:08–cv–1931–T–30TBM, 2009 WL 928321 (M.D. Fla. Apr. 3, 2009).

## V.   BECAUSE PLAINTIFFS ARE SEEKING MONETARY DAMAGES, CERTIFICATION UNDER RULE 23(B)(1)(A) IS PROHIBITED.

The Eleventh Circuit has held that because awards of money damages do not create inconsistent standards of conduct, putative classes seeking compensatory damages "***cannot be certified as a (b)(1)(A) class***." *Cohen v. Office Depot, Inc.*, 204 F.3d 1069, 1078 n.7 (11th Cir. 2000) (emphasis added); *see also In re Dennis Greenman Sec. Litig.*, 829 F.2d 1539, 1545 (11th Cir. 1987) Thus, Plaintiffs' claim for monetary damages defeats (b)(1)(A) certification. *See Mills*, 269 F.R.D. at 674; *Clausnitzer v. Fed. Express Corp.*, 248 F.R.D. 647, 662-63 (S.D. Fla. 2008).

## VI.   PLAINTIFFS HAVE NOT ESTABLISHED THAT A CLASS ACTION IS A SUPERIOR METHOD OF RESOLVING THEIR CLAIMS.

Although a trial plan is not necessarily a prerequisite for a finding of superiority in every case, the Eleventh Circuit has recommended district courts to require a party seeking certification to present a "feasible" trial plan. *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1279 n.20 (11th Cir. 2009). Plaintiffs do not even try to articulate how this case would be tried. And Plaintiffs offer no justification for ignoring these manageability concerns, and argue that this Court should simply ignore these manageability issues because the estimated value of individual class members claims is less than the likely costs of litigating this matter on an individual basis. But the mere fact that some class members claims may be relatively small cannot justify disregarding the individual issues presented by those claims and the insurmountable hurdles they present for any manageable class-wide trial.[62]

---

[62]   *See, e.g., In re Hotel Tel. Charges*, 500 F.2d at 90; *In re Repetitive Stress Injury Litig.*, 11 F.3d 368, 373 (2d Cir. 1993).

Dated: November 17, 2014

Respectfully submitted,

/s/ Andrew J. Patch
David B. Weinstein
Florida Bar No. 604410
weinsteind@gtlaw.com
Nicholas J. Secco
Florida Bar No. 110091
seccon@gtlaw.com
Andrew J. Patch
Florida Bar No. 0091577
patcha@gtlaw.com
**GREENBERG TRAURIG, P.A.**
625 East Twiggs Street, Suite 100
Tampa, Florida  33602
Telephone: (813) 318-5700
Facsimile: (813) 318-5900
*Trial Counsel for Defendants,*
*Papa John's International, Inc.,*
*and Papa John's USA, Inc.*

## CERTIFICATE OF SERVICE

I certify that on November 17, 2014, I electronically filed the foregoing Response in

Opposition to Motion for Class Certification with the Clerk using the CM/ECF system.

/s/ Andrew J. Patch
Attorney

*TPA 511970971v8*

21